## GOODSTEIN et al. v. HUFFMAN et al.

### No. 14070.

Court of Civil Appeals of Texas. Dallas.
May 20, 1949.

Rehearing Denied June 17, 1949.

Sam Passman and Emil Corenbleth, both of Dallas, for appellants.

John Cain and Chaney & Davenport, all of Dallas, for appellees.

BOND, Chief Justice.

This suit was brought by Max N. Huffman and others, owners of lots in severalty fronting on Stutz Street in Maple Grove Acres, an Addition to the City of Dallas, Texas, against A. L. Goodstein and M. R. Mitchell for the purpose of preventing the erection of a building on Lot 10 and approximately 25 feet of Lot 11 in said Addition, owned by A. L. Goodstein; such building to be occupied and used by him in violation of the building restrictions allegedly in force affecting all lots in said Addition.

The Addition consists of 24 lots—Lots 1 to 12, inclusive, facing south on Stutz Street and Lots 13 to 24, inclusive, facing north on said street. All lots in the addition were originally sold with building restrictions recited in each deed of sale—that the lots were to be used for private family dwellings only, and not to be used for trade, commerce, manufacturing, merchandise, or mechanics; and not to be sold to or used by persons of African descent, other than servants occupying servants' quarters. The restriction deeds provided: "Each of the above shall continue in full force and effect and shall run with the title to each tract or any part thereof for the full term of twenty years from the date of dedication, for the benefit of the grantors, and any and all persons hereafter owning any part of the above tracts, violation of or failure to comply with any one or more of same as to any part of said tract shall ipso facto cause the title to the part of such tract affected thereby to revert to the last immediate grantor, his heirs or assigns, and such grantor, his heirs or assigns, shall forthwith have the right to re-enter and repossess such parts; * * * X. Any and all of the above and foregoing restrictions, covenants and conditions may be changed or amended or abol-

ished by an instrument signed, acknowledged and recorded in the Deed Records of Dallas County, Texas; such instrument of writing making such changes, amendments, or abolishing same must be signed by the owners of two-thirds of the total front feet of all the lots on Stutz Avenue. XI. In addition to the foregoing, any person owning any part of Maple Grove Acres shall have the right to enforce the foregoing restrictions by appropriate action."

The aforesaid restrictions and covenants expired in 1945. On April 30, 1947, the Addition having theretofore been annexed to the City of Dallas; and the City Council having zoned all the property on both sides of Stutz Street for: "Manufacturing—2(m-2)," in anticipation of such City zoning ordinance being applied by owners, or their assigns, to lots on Stutz Street, on September 19, 1948, all of the property owners on said street, except those owning Lots 1, 2, 12, and the west part of 11, made and entered into a further written covenant, or agreement, signed and acknowledged by each of them and duly recorded in the Deed Records of Dallas County, Texas, extending the original deed restrictions to their respective lots in consonance with those restrictions recited in their respective deeds, or deeds of their predecessors; and each declared that such restrictions shall continue to run with the title to their respective lots therein designated, and that each of said owners and their assigns shall be bound thereby for an extension period of 20 years from and after the date of such instruments.

On June 11, 1948, Lillian E. Moore, owner of Lot 10 and the east half of Lot 11, and one of the signers to the aforesaid extended restriction agreement, sold the above lots to A. L. Goodstein, and in the deed expressly provided that: "This conveyance is made and accepted subject to any and all restrictions of record affecting the property hereby conveyed." Soon thereafter Goodstein began the construction of a building on said lots—not a private dwelling but one inhibited by the terms of the purported mutual restricted covenant existing between his grantor and the other signers thereto (owners of lots in the area).

It is believed that we can best state our conclusion in this appeal without separate mentioning of the pleadings of the parties and appellants' several points of error; and in such way as to express our opinion on the merits of all issues involved.

The general scheme or plan, as revealed by the agreement of the parties-owners of the purported restricted area, was promulgated by the promoters to provide that such restrictions (running with their respective lots) to private residences, only, and the exclusion of persons of African descent, would be for the "mutual benefit" of each of the undersigned property owners, and would make their property therein listed more attractive and valuable to purchasers and to themselves as homesites; and it might be said that it was within the contemplation of all of said owners of lots in the restricted area that they would be equally favorably interested in the scheme,—irrespective of whether or not each owner signed the restriction agreement. Their hope was that all owners of lots in the area would sign the restriction agreement. However, such limitation of the extent of territory to which the restrictions should apply was not an inducement for the signers thereto in the exercise of their right of contract with their neighbors. The law recognizes the right of parties to contract with relation to their property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal.

The facts in this case bring it within the scope of the rule that lot-owners signing an agreement submit their property to a burden because of the fact that a like burden is imposed upon others, and over all, beneficial to all those entering into the mutual scheme or plan. Appellants contend that because the owners of Lots 1 and 2 at the farthermost east end of the north side of the restricted area on Stutz Street and the owners of Lot 12 and about half of Lot 11 at the extreme west end of the north side of said street, had not signed the restriction agreement, therefore the general scheme or plan under which all others had joined themselves and their property, failed. While it might be thought from the absence of their signatures to the agreement that the owners of Lots 1 and 2 and of 12 and half of 11 were not concerned with the fail-

ure of the scheme or plan, yet the owners of the adjoining lots, having signed the agreement, would be concerned with such failure.

■ We are of the opinion that by excepting Lots 1, 2, 12 and west part of 11 (upon which were buildings then being used for purposes not in conformity with the restrictions) from the plan, such exceptions did not show a change in the area as to avoid restrictions running against the other lots; but that such exceptions emphasized and strengthened the plan to confine the zoning restrictions merely to the designated lots in the agreement, rather than weakening or avoiding the restrictions.

In the instant case the owners of all adjoining lots to those above excluded, particularly Mrs. Moore, the then owner of the lots involved in this suit, having signed the restriction agreement for the mutual benefit to be derived by each of those signing the agreement running with their property, we may not assume that such agreement did not meet the full measure of the neighborhood scheme or plan for restriction of their property to private dwellings. The restrictions were incorporated in appellants' chain of title to the lots involved in this suit. It was not essential that there be a general scheme of restricting all of the lots in the addition in order to make it effective as to the lots of owners who signed the agreement. "Valid restrictions could result from a scheme to restrict the lots in only one block, or those facing on only one street." Cannon v. Ferguson, Tex.Civ. App., 190 S.W.2d 831, 834; Curlee et al. v. Walker et al., 112 Tex. 40, 244 S.W. 497. So, here, all contiguous lots on the south side of Stutz Street (13 to 24), and all lots on the north side of said street except lots 1, 2, 12 and half of 11, were brought into the neighborhood scheme,—a valid restriction enforceable by the owners of the lots within the defined area. The restriction agreement created a personal covenant of the signers running throughout with the lots brought under zoning.

■ Appellant further contends that the restriction agreement providing against ownership of lots by persons of African descent is unconstitutional, thus invalidating it and all other restrictions in the agreement. Such ownership is not involved in this suit so as to affect the building restrictions otherwise stated, which were violated by appellants. Hence we deem it unimportant to decide here the issue. Suffice to say, if invalid, it would not in any way affect the other provisions of the agreement. Crump v. Perryman, Tex.Civ.App., 193 S. W.2d 233.

The defendant M. R. Mitchell having been dismissed by the judgment of the trial court, and an injunction having been entered restraining and commanding A. L. Goodstein from further constructing the contemplated building for nonconforming use in contravention of the restrictions (not for private dwelling), appellant's points of error are overruled and the judgment of the trial court is in all things affirmed.