## No. 25663

**Virginia A. Malouff, individually, and as a representative of a class v. Midland Federal Savings and Loan Association and Gordon Price**

(509 P.2d 1240)

Decided April 23, 1973. Opinion modified and as modified rehearing denied June 4, 1973.

Cole, Hecox, Tolley, Edwards & Hero, Lawrence A. Hecox, Michael R. Bromley, for plaintiff-appellee.

Fairfield and Woods, Charles J. Beise, Charlton H. Carpenter, for defendant-appellant.

No appearance for Defendant Gordon Price.

MR. JUSTICE LEE delivered the opinion of the Court.

This appellate proceeding was transferred on motion from the Court of Appeals in view of the significant public interest in the subject matter of the appeal and because of the major significance of the legal principles involved. 1969 Perm. Supp., C.R.S. 1963, 37-21-9. The principal issue concerns the validity of the acceleration clause contained in a deed of trust, a matter of first impression in Colorado. The clause in controversy, sometimes designated as a "due on sale" clause, provides as follows:

"The said party of the first part [Borrower] further covenants and agrees:

"Not to alienate nor to encumber to the prejudice of the Association said real estate nor to commit, permit, or suffer any waste, impairment, or depreciation of said property and, in the event of any sale or transfer of title to the property herein described, such purchaser or new owner shall be deemed to have assumed and agreed to pay the indebtedness owing the Association hereunder, whether or not the instrument evidencing such sale or transfer expressly so provides, *and at any time after such sale or transfer, without limiting the foregoing, the Association may, at its option, declare all of the remainder of the indebtedness immediately due and collectible, whether or not any default exists;* this covenant shall run with said land and remain in full force and effect until said indebtedness is liquidated and the Association may, without notice to party of the first part,

deal with such new owner or owners with reference to the debt secured hereby in the same manner as with the party of the first part, without in any way altering or discharging the party of the first part's liability hereunder upon the indebtedness hereby secured." (Emphasis added.)

We are primarily concerned with the italicized portion of the above provision, which was specifically challenged by appellee, Virginia A. Malouff, and which was declared to be void by the trial court as an invalid restraint on alienation. We reverse the judgment.

I.

The facts are essentially without basic dispute. In 1966 the subject property, a duplex located at 2170-72 Broadmoor Circle in Colorado Springs, was encumbered by a deed of trust from the owner, Gordon Price, to the use and benefit of appellant, Midland Federal Savings and Loan Association (Midland). The indebtedness secured thereby was in the principal sum of $33,000 bearing interest at 7% per annum, payable in monthly installments of $233.25. In May of 1971 appellee (Malouff) contracted to purchase the duplex for $57,000, by a cash payment of $27,000 and the assumption of the Midland encumbrance balance which was approximately $30,000. Malouff applied to Midland for permission to assume the loan. Midland agreed not to accelerate the indebtedness if Malouff would comply with Midland's assumption requirements, which included the execution of an Assumption and Modification Agreement. This provided that in consideration of Midland's permitting Malouff to assume the existing loan and agreeing not to exercise its acceleration privilege contained in the trust deed, the unpaid loan balance would bear interest at the increased rate of 8% and the monthly payments would thereby be increased to $254.29.

At the sale closing on July 9, 1971, Malouff's regular attorney could not be present. However, she was represented by his associate, who had previously examined the closing documents. Malouff signed the required assumption agreement. She testified that its terms were not read or explained to her. This was disputed by the testimony of the closing

agent. In any event, the sale was closed and title to the duplex was transferred *subject to* the Midland trust deed. The closing documents were left with the agent for recording and appropriate distribution.

The next day, Malouff examined her copy of the assumption agreement and, upon reconsideration of its terms, she called the real estate agent and instructed that the papers not be delivered to Midland until her regular attorney had an opportunity to examine them.

After inspecting Midland's assumption agreement, Malouff's attorney informed Midland that his client would not agree to the higher 8% interest rate. The closing agent was then instructed by the attorney to record the deed. This was done. Thereafter, Malouff tendered to Midland monthly payments at the 7% rate, as originally provided in the note and deed of trust. The tendered payments were refused by Midland. Midland elected to accelerate the indebtedness and demanded payment in full by September 1, 1971. To this demand Malouff responded by commencing this action.

## II.

Malouff's complaint, brought in her behalf individually and as a representative of a class, sought relief under three claims. The first claim requested a preliminary and permanent injunction enjoining Midland from foreclosing its trust deed, and for a declaration that Malouff was legally entitled to assume the Midland loan. The second claim was asserted solely against the seller of the property, Gordon Price, and requested rescission of the contract of sale in the event the first claim was decided adversely to Malouff. We are not here concerned with this claim, as the trial court found in favor of Malouff on the first claim. The third claim related to the class action and sought injunctive relief for those members of the class, similar to Malouff, who were not permitted to assume the existing loan but were required to pay increased interest to Midland on assumption, and for return of the increased interest paid.

After an evidentiary hearing, the court preliminarily enjoined Midland from foreclosing against Malouff, thus

maintaining the status quo pending final determination of the merits. Malouff filed a motion for summary judgment. It was stipulated thereafter that all the facts necessary for the court to enter final judgment on the claims between Malouff and Midland were before the court, as shown by the evidence and exhibits at the hearing on preliminary injunction and as contained in the affidavits filed on behalf of Midland, and, therefore, no further evidentiary hearing was necessary. The trial court on February 29 entered extensive findings of fact, conclusions of law and final judgment in favor of Malouff, holding the acceleration clause invalid as an unlawful restraint on alienation, and, further, that it was too vague and uncertain to be enforceable; that the specific terms of the clause requiring assumption of the indebtedness on sale by a purchaser were unenforceable and void; and that plaintiff was entitled to proceed under the class action to obtain final declaratory and injunctive relief.

### III.

The common law doctrine of restraints on alienation is a part of the law in Colorado. C.R.S. 1963, 135-1-1. As declared in *Atchison v. Englewood,* 170 Colo. 295, 463 P.2d 297, public policy demands that property interests be freely alienable and that restraints which withdraw property from the stream of commerce are invalid. In determining what restraints are invalid, some legal scholars have declared that all restraints on alienation are invalid unless they fall within certain recognized categories of exceptions. This view was adopted and followed by the trial court, which held that the due-on-sale clause here involved did not fall within one of the exceptions and it was an invalid restraint. For a discussion, see *"The Minority Doctrine Concerning Direct Restraints on Alienation,"* 57 Mich. L. Rev. 1173.

In contrast to this rigid approach, is the view that holds a restraint on alienation may or may not be invalid, depending upon the reasonableness of the restraint. As suggested in *Atchison v. Englewood, supra,* the rule against restraints on alienation relates to *unreasonable restraints.* In

discussing this problem, Mr. Justice Traynor in *Coast Bank v. Minderhout,* 61 Cal. 2d 311, 38 Cal. Rptr. 505, 392 P.2d 265, observed:

"The view that the common-law rule against restraints on alienation prohibits all such restraints has been forcefully criticized on the ground that it loses sight of the purposes of the rule and needlessly invalidates reasonable restraints designed to protect justifiable interests of the parties. (See Sweet, Restraints on Alienation, 33 L.Q. Rev. 236, 246-253; Manning, The Development of Restraints on Alienation Since Gray, 48 Harv. L. Rev. 373, 398-400, 406; Northwest Real Estate Co. v. Serio, 156 Md. 229, 236, 144 A. 245 (Chief Judge Bond dissenting); cf. Simes & Smith, Future Interests (2d ed.) § § 1115, 1168. Bernhard, The Minority Doctrine Concerning Direct Restraints on Alienation, 57 Mich. L. Rev. 1173, 1177.)"

We subscribe to the view that the question of the invalidity of a restraint depends upon its reasonableness in view of the justifiable interests of the parties.

*Coast Bank, supra,* considered a landmark decision in the area of due-on-sale clauses, upheld generally the validity of such a clause and in effect rejected the view that such a clause in a security instrument is per se an invalid restraint. Following *Coast Bank, supra,* numerous decisions have upheld the validity of such provisions in various circumstances. *Jones v. Sacramento Savings and Loan Association,* 248 Cal. App. 2d 522, 56 Cal. Rptr. 741; *Hellbaum v. Lytton Savings and Loan Ass'n. of No. Cal.,* 274 Cal. App. 2d 456, 79 Cal. Rptr. 9; *Cherry v. Home Savings & Loan Association,* 276 Cal. App. 2d 574, 81 Cal. Rptr. 135; *Lazzareschi Invest. Co. v. San Francisco Fed. S. & L. Assn.,* 22 Cal. App. 3d 303, 99 Cal. Rptr. 417; *Shalit v. Investors Savings and Loan Association,* 101 N.J. Super. 283, 244 A.2d 151; *Stith v. Hudson City Savings Institution,* 63 Misc. 2d 863, 313 N.Y.Supp.2d 804; *Gunther v. White,*____ Tenn.____, 489 S.W.2d 529; *People's Savings Assn. v. Standard Industries, Inc.,* 22 Ohio App. 2d 35, 257 N.E.2d 406; *Walker Bank & Trust Company v. Neilson,* 26 Utah 2d 383, 490 P.2d 328.

■ We hold the due-on-sale clause here to be a reasonable restraint on alienation. The question then remains, what conditions may be imposed on an assuming purchaser in return for non-exercise of the clause? In *Cherry v. Home Savings & Loan Association, supra,* an analogous situation to that in the present case was considered. It was there held to be a justifiable interest of the lender to protect itself against a rise in the interest rate and to permit an acceleration of the indebtedness on sale where the purchaser will not agree to pay an increased interest rate on assumption of the loan. The restraint on alienation by the election to exercise the due-on-sale clause under these circumstances was held to be a reasonable one and enforceable. The court stated:

"Secondly, loan agreements frequently permit a borrower to pay off a loan before it is due. When interest rates are high, a lender runs the risk they will drop and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security. This is merely one example of ways taken to minimize risks by sensible lenders.

"There is no inequity visible from such a provision. * * *"

*Shalit, supra, Stith, supra, People's Savings Assn., supra,* and *Gunther v. White, supra,* all specifically upheld the right to accelerate where a purchaser refused to pay an increased interest rate, as in *Cherry, supra.*

IV.

Among the matters in evidence before the trial court was the affidavit of Marvin W. Buckles, Executive Vice President of Midland, which set forth the rationale with respect to the requirement by Midland of an increased interest rate on assumption of an outstanding loan, when the rate provided in the note is below the current market rate. This evidence, not

in dispute, demonstrated that the imbalance between the loan demand and the money supply, arising out of an inflationary economy, required that Midland, as well as similar lending institutions, adopt measures which would protect the borrowers as well as the lenders from the hazards of long-term loans (20-30 years) at fixed interest rates. We quote from this affidavit:

"* * * As of November 30, 1971, Midland held 60,388 deposit accounts. Midland uses these deposit accounts to make home loans. Midland must make loans at reasonable rates to its borrowers, but it also has the responsibility to give its depositors a reasonable rate of return on their deposits. A reasonable rate of return on dollars invested in home loans is an interest rate which is comparable to the current rate of return in the lending industry. Midland is willing to deal with the original borrower on a long term basis, but not with any other party without having an opportunity to consider the substituted borrower and current interest rates. * * *

"* * * The two primary ways that Midland may make the interest rate adjustments essential for it to protect its depositors against inflation are by making variable interest rate loans or by employing a 'due-on-sale' clause to adjust interest rates on assumptions of existing loans when circumstances warrant an adjustment. Midland has chosen the latter method to enable its depositors to combat inflation. The variable interest rate option may reflect the trend in the industry, but the 'due on sale' provision is probably the most advantageous procedure to the borrowing public. Under this method, the interest rate is fixed between Midland and its original borrower. Unlike the variable interest rate loan, the original borrower is able to retain the advantage of his original interest rate for as long as he has the loan, even though current interest rates may have risen substantially. If the original borrower sells the property during the life of the loan, the purchaser is then able to assume the loan at no higher rate than the then current market interest rate and probably at a slightly lower rate than the market.

"If lenders were unable to make some form of interest rate

adjustments on long-term loans, they would have to make only short-term loans amortized over periods of less than ten years. Original borrowers then would not be able to pay off their home purchases without having to refinance their indebtedness one or more times in the process. Short-term loans would also increase monthly payments and make the obtaining of such loans prohibitive to many people."

We do not consider the motive of Midland in seeking to protect itself and the borrower from the effects of inflationary or deflationary conditions in the money market to be improper or unlawful. Both parties have the benefit of their original bargain during their continued creditor-debtor relationship. However, when the property is sold to a purchaser who desires to assume the existing loan, economic consideration may reasonably justify the lender in raising the interest rate to or approaching one equal to the current market rate. We view the condition imposed for the non-exercise of the acceleration clause under such circumstances to be a reasonable protection of a justifiable interest and the operative effect of the clause does not therefore constitute an invalid restraint on alienation.

The issue of Midland's action under its due-on-sale clause here does not involve inequitable or unconscionable conduct. Malouff does not contend, and the record does not justify any inference, that Midland attempted to raise the interest rate beyond the current market rate then existing. According to the affidavit, the Midland policy was to raise the interest half way between that required by the note and the current interest rate at the time of the sale. Nothing suggests that was not the case here. Were there an effort to extract an excessive interest rate unrelated to the current rate, then the result might be otherwise. A court of equity may relieve a borrower from the effect of a due-on-sale clause where the exercise thereof is the result of some unconscionable or inequitable conduct of the lender. *Tucker v. Pulaski,* 252 Ark. 849, 481 S.W.2d 725; *Clark v. Lachenmeier,* 237 So. 2d 583 (Fla. App. 1970); *Gunther v. White,* ____ Tenn. ____, 489 S.W.2d 529.

### V.

The trial court also erred in concluding that the due-on-sale clause was too vague and uncertain to be enforceable. This conclusion was based upon the language of the acceleration clause, which stated: "At any time after such sale or transfer, without limiting the foregoing, the Association may, at its option, declare all of the remainder of the indebtedness immediately due and collectible; * * *" Malouff's contention was that this open-ended provision authorized an election to accelerate at any time, even years in the future. We do not agree. The prevailing rule is that under an ordinary acceleration clause in a mortgage or trust deed, the obligee has a reasonable time after the default or the event which gives rise to the right to accelerate in which to elect to declare the indebtedness due. *Lovell v. Goss,* 45 Colo. 304, 101 P. 72; *Washburn v. Williams,* 10 Colo. App. 153, 50 P. 223; 55 Am. Jur. 2d *Mortgages* § 384. Accordingly, where, as here, no definite time is specified by which the election to accelerate must be exercised, such election to do so must be made within a reasonable time. Here, the election to accelerate was made by Midland within a month after notice of Malouff's refusal to tender the payments required by the Assumption and Modification Agreement. Of course, each case must be considered on its own facts, and, certainly, an election to accelerate a year or years in the future, as hypothesized by Malouff, could not be considered reasonable under ordinary circumstances.

### VI.

Finally, it is unnecessary to discuss the trial court's additional conclusion that the clause requiring assumption by the purchaser of the unpaid indebtedness on sale of the premises was unenforceable and void. This is so for the reason that the conclusion was predicated upon the assumed invalidity of the acceleration clause as an unlawful restraint on alienation. Having found the clause to be a reasonable restraint, and therefore valid, the agreement to forbear the exercise of that right to accelerate constituted adequate consideration for Malouff's undertaking to assume the unpaid

indebtedness and to pay the increased interest rate.

Discussion of the additional issue of whether the trial court correctly ruled the third claim for relief to be a proper class action is also academic in view of our ruling that Malouff's claim for injunctive relief is without merit.

The judgment is reversed and the cause remanded with directions to vacate the injunction and to dismiss the first and third claims for relief.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY dissent.