[No. 43808. En Banc. January 29, 1976.]

LARRY R. MILLER, ET AL, *Appellants*, v. PACIFIC FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, *Respondent*.

*Walstead, Mertsching, Husemoen, Donaldson & Barlow*, by *Barry J. Dahl*, for appellants.

*Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*, by *Valen H. Honeywell*, for respondent.

HUNTER, J.—On June 19, 1972, Larry R. Miller and Mary Ann Miller, the appellants, executed a general promissory note and accompanying real estate mortgage with Pacific First Federal Savings and Loan Association, the respondent. The promissory note contains the following provision:

I understand this loan is personal to me and is to be secured by a mortgage or deed of trust on real property and that my personal responsibility and occupancy and/or control of such real property is a material inducement to lender to make said loan. If title to said property shall pass from me by deed or otherwise, or said property shall be sold on contract, or if the property shall be vacated by me, then such change in title or occupancy shall be deemed to increase the risk of lender, and lender or other holder may declare the entire balance immediately due and payable, *or at its sole option it may consent to said change in title or occupancy and may increase the interest rate of said loan not to exceed two per cent per annum* to compensate for such increased risk. Such increase in interest shall entitle the holder to increase monthly payments on the loan so as to retire the obligation within the original stipulated time.

(Italics ours.)

On January 21, 1974, the appellants executed a real estate contract in which they sold their interest in the property to a third party, subject to the note and real estate mortgage. Respondent then invoked the italicized portion of the provision quoted above and raised the interest rate on appellants' loan one-half of 1 percent, effective March 1, 1974. The appellants sought to have the provision declared void and sued both for an injunction to prevent respondent from applying the provision and for damages. The trial court, relying solely on the language of the promissory note, granted summary judgment in favor of respondent and dismissed appellants' claim. Appellants have appealed from this judgment. We affirm.

Appellants contend that the trial court should not have granted summary judgment. They argue that they should not have been held to the express and clear language of the agreement, but rather that at least they should have been

allowed to demonstrate that there was no *actual* increase in respondent-lender's risk on the loan by virtue of the third-party real estate contract. Appellants' theory is that before the lender-mortgagee can increase the interest rate on the loan, it should be required to demonstrate an actual increase in risk due to the transfer of the property. They contend that enforcement of the provision in this agreement without a showing of actual increased risk would create an unreasonable restraint on alienation of their property contrary to public policy.

Specifically before us, in our consideration of this contention, is the language in the note that permits the respondent lender, in the absence of demonstrated increased risk, to raise the interest rate on the loan when the mortgaged property is transferred. Generally, the common-law rule is that limitations on the free alienation of property are invalid. *See Malouff v. Midland Fed. Sav. & Loan Ass'n*, 181 Colo. 294, 299, 509 P.2d 1240, 1243 (1973); *Richardson v. Danson*, 44 Wn.2d 760, 766, 270 P.2d 802 (1954). But reasonable restraints that are justified by legitimate interests of the parties are not necessarily void. *See Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 299. In fact, some states have upheld "due-on-sale" clauses where payment is accelerated and the entire amount of the loan becomes due upon transfer of the mortgaged property. *See, e.g., Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 301; *Gunther v. White*, 489 S.W.2d 529, 530 (Tenn. 1973); *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis. 2d 99, 110, 205 N.W.2d 762 (1973).

Often a lender-mortgagee utilizes a due-on-sale clause in its loan agreements to achieve indirectly an increase in the loan interest rate upon a transfer of the property. The lender simply demands an increased interest rate in exchange for his consent to the transfer and for his agreement not to enforce the acceleration clause in the agreement. *See, e.g., Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 297; *Gunther v. White, supra* at 529; Note, *Judicial Treatment of the Due-on-Sale Clause: The Case for*

*Adopting Standards of Reasonableness and Unconsciona-bility*, 27 Stan. L. Rev. 1109, 1110-11 (1975). Some states, however, have refused to enforce due-on-sale clauses, holding them to be unreasonable restraints on alienation of property and contrary to public policy in the absence of a showing that an increase in the interest rate is reasonably necessary to protect the lender's security. In those states the transfer of the property must in fact increase the lender-mortgagee's risk before the due-on-sale clause will be held valid. *See, e.g., Baltimore Life Ins. Co. v. Harn*, 15 Ariz. App. 78, 81, 486 P.2d 190, 193 (1971); *Tucker v. Lassen Sav. & Loan Ass'n*, 12 Cal. 3d 629, 638, 526 P.2d 1169, 116 Cal. Rptr. 633 (1974); *cf. La Sala v. American Sav. & Loan Ass'n*, 5 Cal. 3d 864, 882, 489 P.2d 1113, 97 Cal. Rptr. 849 (1971).

 The present case, on the other hand, does not involve the operation of an acceleration clause but instead involves the portion of the loan agreement provision quoted above that directly permits the respondent mortgagee to increase the interest rate upon transfer of the property. In practical terms this provision merely affects the vendor-mortgagor's total asking price for his property. A higher interest rate will probably cause the vendor-mortgagor to lower his sales price in order to compete pricewise with similar property. *See* Note, *Judicial Treatment of the Due-on-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability*, 27 Stan. L. Rev. 1109, 1113 (1975). Thus the vendor-mortgagor's ability to command his *preferred* asking price might be somewhat impaired. Nevertheless, the increased interest provision does not restrain the actual *transfer* of the property because there is no constraint on the vendor-mortgagor's freedom to alienate his property. The Supreme Court of Tennessee reached the same conclusion in a decision that upheld an acceleration clause. It summarized this situation as follows:

Finally analyzed, the situation here is simply that [the mortgagors] can sell their property at a higher price if they can sell it at the lower interest rate. The [mortga-

gees] under their contract have the right to insist upon the repayment of their loan in the event of sale, so that they can relend the money at an increased interest rate, and so maintain their supply of lending money, at the level of their present cost of such money. In this situation, equity should not depart from the law which requires it to enforce valid contracts and strike down the acceleration option simply because its exercise will let the [mortgagees], not the [mortgagors], make the profit on the interest rate occasioned by the increased cost of money.

*Gunther v. White, supra* at 532. We agree with this reasoning and hold therefore that a loan agreement provision that permits the lender to increase the interest rate upon transfer of the mortgaged property, even without a showing of increased risk to the lender, is not invalid per se as an unreasonable restraint on the free alienation of property. *Cf. Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 300; *Stith v. Hudson City Sav. Institution,* 63 Misc. 2d 863, 313 N.Y.S.2d 804 (1970); *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works, supra.*

This does not mean, however, that there are no limitations on the use of increased interest clauses in loan and mortgage agreements. Even the courts that have upheld the validity of due-on-sale clauses state that they will not be enforced in all cases.

It is generally accepted that a court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause in a mortgage where the condition making the option operative is the result of some *unconscionable* or *inequitable* conduct of the mortgagee . . .

*Gunther v. White, supra* at 531. *See Malouff v. Midland Fed. Sav. & Loan Ass'n, supra* at 303; *cf. Jacobson v. McClanahan,* 43 Wn.2d 751, 755, 264 P.2d 253 (1953).

Whether [acceleration clauses] may be utilized in a particular case is dependent upon the facts and whether the invocation of the acceleration clause would be *inequitable under the circumstances.*

(Italics ours.) *Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works, supra* at 106. We feel that the increased interest rate clause in the present case should be subject to the same standards. Therefore, this kind of clause is enforceable except in situations where its operation "would be inequitable under the circumstances" and thus would justify the exercise of the court's equitable powers. *See Malo v. Anderson,* 62 Wn.2d 813, 815, 384 P.2d 867 (1963).

In the present case, appellants and respondent both voluntarily agreed to all the terms of the note and mortgage. Nothing suggests that there was any duress, misrepresentation, or over-reaching on the part of the respondent. The respondent did not engage in any inequitable conduct either at the time the agreements were executed or at the time the interest rate was raised pursuant to the provision in question. The respondent merely pursued its rights under a provision that was clearly stated in the agreement. Under these circumstances we find no reason that the increased interest provision should not be enforced and, therefore, the trial court properly granted respondent's motion for summary judgment.

Appellants also argue that the increased interest rate constitutes a penalty and therefore the provision is unenforceable. We reject this argument, however, because the increased interest rate was neither a measure of damages nor a penalty for a breach of contract. Instead, the increase was just an agreed upon method of adjustment to changes in the conditions underlying the agreement. The provision at issue simply specified some of the parties' obligations during the course of performance. Appellants did not breach the agreement; on the contrary, they remained liable on the note even after the real estate contract was executed. The increase in interest was merely one of the terms of the agreement to become operative upon certain occurrences and was not a penalty. There is therefore no reason that the provision should not be enforced. *See Foster v. Knutson,* 84 Wn.2d 538, 545, 527 P.2d 1108 (1974); *Puget Sound*

*Power & Light Co. v. Shulman*, 84 Wn.2d 433, 439, 526 P.2d 1210 (1974).

The judgment of the trial court is hereby affirmed.

STAFFORD, C.J., FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., and KALE, J. Pro Tem., concur.