**SONNY ARNOLD, INC. et al.,
Petitioners,**

v.

**SENTRY SAVINGS ASSOCIATION et
al., Respondents.**

**No. C–496.**

Supreme Court of Texas.

June 9, 1982.

McCleskey, Harriger, Brazill & Graf, George H. McCleskey, Bass & Hobbs, R. Byrn Bass, Lubbock, for petitioners.

Galey & Cummings, Charles E. Galey, Lubbock, for respondents.

McGEE, Justice.

Sonny Arnold, Incorporated, (hereinafter "Arnold"), Foxmoor of California and Jeffry Leland Wilson, petitioners herein, appeal from the judgment of the court of appeals affirming the trial court's denial of a temporary injunction. The petitioners sought to enjoin a sale of real property by authority of an optional acceleration clause contained in a deed of trust. They argue that the above mentioned provision is an unreasonable restraint on alienation and therefore invalid and unenforceable. We hold that the particular clause in question is valid and enforceable, and affirm the judgment of the court of appeals denying the application for writ of temporary injunction.

The opinion of the court of appeals correctly states the nature of this case. 615 S.W.2d 333. Our principal concern is with the validity of the clause in question and therefore we refer to the court of appeals

opinion for a complete recitation of the facts.

Paragraph 19 of the deed of trust is the provision in question and reads as follows:

19. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER: ASSUMPTION. On sale or transfer of (i) all or any part of the Property, or any interest therein, or (ii) beneficial interests in Borrower [Arnold] (if Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity), Lender [Sentry] may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. This option shall not apply in case of

\*    \*    \*    \*    \*    \*

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note.

The language of paragraph 27, which provides for acceleration and remedies, permits the lender (Sentry) the option of invoking the power of sale afforded by the deed of trust without prior judicial hearing.

In an effort to meet the issue squarely, for the purpose of this opinion we will assume the lender has invoked the acceleration provision for the purpose of increasing the rate of interest on the mortgage loan and not because the lender was attempting to prevent impairment of the security for the loan.

The petitioners contend that the clause in this case constitutes an unreasonable restraint on alienation and therefore it is invalid and unenforceable. They urge us to adopt the rule that the restraint is unreasonable unless the lender proves enforcement of the clause is reasonably necessary to protect against impairment to its security or the risk of default. *Wellenkamp v. Bank of America*, 21 Cal.3d 943, 582 P.2d 970, 148 Cal.Rptr. 379 (1978); *Patton v. First Federal Savings & Loan Association*, 118 Ariz. 473, 578 P.2d 152 (1978); *Tucker v. Pulaski Federal Savings & Loan Association*, 252 Ark. 849, 481 S.W.2d 725 (1972).

The test set out by the California Supreme Court in *Wellenkamp* recognized that all restraints on alienation are not *per se* invalid, and thus included consideration of not only the quantum of restraint imposed by enforcement of the clause, but also the justification for imposing the restraint. The *Wellenkamp* majority believed that the restraint was unreasonable because the lender was attempting to enforce the clause to gain a higher rate of interest, without the necessity of proving that its security had been impaired by the conveyance of the property.

In order for the clause to operate as an unreasonable restraint on alienation, we must necessarily decide if a restraint exists. Therefore, we first address the issue of whether the clause before us constitutes a restraint on alienation.

The Restatement of Property defines restraints on alienation.[1] It classifies restraints into three types: (1) disabling restraints, (2) promissory restraints, and (3) forfeiture restraints.[2] Since the clause in

1. Restatement of Property, § 404 (1944).

2. § 404 Definitions.
(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance
(a) to be void; or

(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
(c) to terminate or subject to termination all or part of the property interest conveyed.

this case does not attempt to cause a later conveyance to be void or terminate the property interest conveyed, it is neither a disabling restraint nor a forfeiture restraint. As a result, we must determine if the clause constitutes a promissory restraint on alienation.

[1] In order to satisfy the Restatement definition of a promissory restraint, the clause must attempt to "cause a later conveyance to impose contractual liability[3] on the one who makes the later conveyance *when such liability results from a breach of an agreement not to convey . . .*" (emphasis added). Restatement of Property, § 404(1)(b) (1944). The clause in this case does not contain an agreement not to convey as required by the Restatement.[4] *Mattern v. Herzog*, 367 S.W.2d 312, 319 (Tex. 1963). As noted by the Supreme Court of Nebraska in *Occidental Savings & Loan Association v. Venco*, 206 Neb. 469, 293 N.W.2d 843 (1980),

> The questioned clause in no manner precludes the owner-mortgagor from conveying his property. The owner is free to convey without legal restraint and the conveyance does not cause a forfeiture of title, but only an acceleration of the debt.
>
> It is true that the possibility of acceleration may impede the ability of an owner

to sell his property as he wishes; nonetheless, not every impediment to a sale is a restraint on alienation, let alone contrary to public policy. It is a fact that zoning restrictions, building restrictions, or public improvements may impede the sale and substantially affect the ability of an owner to realize a maximum price, yet no one suggests that such restrictions or covenants, as a class, are invalid simply because they affect the ease with which one may dispose of one's property. We are somewhat at a loss to understand how or why so many courts have been willing to describe a 'due on sale' clause as a restraint on alienation and we are unwilling to do so.

293 N.W.2d at 845. The Supreme Court of Washington in *Miller v. Pacific First Federal Savings & Loan Association*, 86 Wash.2d 401, 545 P.2d 546 (1976), made the following observation:

> In practical terms this provision merely affects the vendor-mortgagor's total asking price for his property. A higher interest rate will probably cause the vendor-mortgagor to lower his sales price in order to compete pricewise with similar property. [citations omitted] Thus the vendor-mortgagor's ability to command

3. In *comment g* to § 404 "contractual liability" within the meaning of the Restatement is discussed. Such liability "exists when the effect of making a conveyance in violation of the restraint is that the person so making such conveyance is subject either to damages, or, in a proper cause, to equitable relief by way of specific performance or an injunction, or some combination of those types of relief."

4. In this respect it is distinguishable from some of the cases cited by petitioners where the mortgagor covenanted he would not transfer the subject property, and the restraint was held unreasonable. *Nichols v. Ann Arbor Fed. Sav.*

(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.
(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.
(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint.

*& Loan Ass'n*, 73 Mich.App. 163, 250 N.W.2d 804 (1977) ("The purchaser covenants and agrees that he will not assign or convey his interest . . ."); *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison*, 87 Wash.2d 437, 553 P.2d 1090 (1976) ("The mortgagors further agree that they will not make any voluntary inter vivos transfer of the premises or any part thereof . . ."); *First Fed. Sav. & Loan Ass'n v. Lockwood*, 385 So.2d 156 (Fla. 2d DCA 1980) ("No conveyance of said property . . . shall be made without the written consent of Mortgagee."); *Sanders v. Hicks*, 317 So.2d 61 (Miss. 1975) ("The within property shall not be sold or encumbered without the express written consent of the within mortgagees . . ."). See also *Baker v. Loves Park Sav. & Loan Ass'n*, 61 Ill.2d 119, 333 N.E.2d 1 (1975), and *Malouff v. Midland Fed. Sav. & Loan Ass'n*, 181 Colo. 294, 509 P.2d 1240 (1973) where the mortgagor's promise not to convey was held to be a reasonable restraint on alienation.

his *preferred* asking price might be somewhat impaired. Nevertheless, the increased interest provision does not restrain the actual *transfer* of the property because there is no constraint on the vendor-mortgagor's freedom to alienate his property. . . .

Furthermore, the transfer of property does not impose any contractual liability on the transferor. As explained by the *Miller* court:

The increased rate was neither a measure of damages nor a penalty for a breach of contract. Instead, the increase was just an agreed upon method of adjustment to changes in the conditions underlying the agreement. The provision at issue simply specified some of the parties' obligations during the course of performance. Appellants [mortgagors] did not breach the agreement; on the contrary, they remained liable on the note even after the real estate contract was executed. The increase in interest was merely one of the terms of the agreement to become operative upon certain occurrences and was not a penalty . . . .

545 P.2d at 550.

■ In light of the foregoing authority, we do not believe the clause before us constitutes the type of restraint on alienation prohibited by the Restatement of Property. Even if we were of the opinion that the clause operates by indirection as a restraint, it would not fit into the usual classifications of invalid restraints on alienation. *See Mattern v. Herzog, supra.*

■ A mortgage is governed by the same rules of interpretation which apply to contracts. *See generally* 55 Am.Jur.2d *Mortgages* § 175 (1971). Thus, the issue of the validity of the clause before us should be resolved by an application of contract principles. Such an approach recognizes the parties' right to contract with regard to their property as they see fit, so long as the contract does not offend public policy and is not illegal. *Curlee v. Walker*, 112 Tex. 40,

244 S.W. 497 (1922); *Goodstein v. Huffman*, 222 S.W.2d 259 (Tex.Civ.App.—Dallas 1949, writ ref'd).

■ At the outset, we referred alternatively to the clause as an optional acceleration provision. As such, it is subject to the equitable rules and defenses applicable to other acceleration provisions. As stated by the court in *Parker v. Mazur*, 13 S.W.2d 174 (Tex.Civ.App.—San Antonio 1928, writ dism'd),

A court of equity may relieve against a provision for acceleration where the default of the debtor is the result of accident or mistake, 'when it is procured by the fraud or other inequitable conduct of the creditor himself.'

13 S.W.2d at 175 [citations omitted]. *See also Vaughn v. Crown Plumbing & Sewer Service, Inc.*, 523 S.W.2d 72 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Brown v. Hewitt*, 143 S.W.2d 223 (Tex.Civ. App.—Galveston 1940, writ ref'd). The record in this case is devoid of any allegation of fraud or trickery on the part of Sentry.

■ The harsh nature of the acceleration remedy demands that any contractual provision therefor, in order to be effective, should be clear and unequivocal. The clause at issue clearly states the acceleration option shall not apply when the transferee agrees to the lender's requirement of an increase in the rate of interest payable under the note. We find nothing inherently evil, unreasonable or oppressive in a lender conditioning approval of a transfer on the transferee's agreement to pay a greater rate of interest than that paid by his transferor. A valid business purpose is served by such a requirement. *Williams v. First Federal Savings & Loan Association*, 651 F.2d 910 (4th Cir. 1981); *Dunham v. Ware Savings Bank*, —— Mass. ——, 423 N.E.2d 998 (1981); *Mills v. Nashua Federal Savings & Loan Association*, N.H., 433 A.2d 1312 (1981); *Occidental Savings & Loan Association v. Venco*, 206 Neb. 469, 469, 293 N.W.2d 843 (1980); *Crockett v. First Federal Sav-*

ings & Loan Association, 289 N.C. 620, 224 S.E.2d 580 (1976); Century Federal Savings & Loan Association v. Van Glahn, 144 N.J. Super. 48, 364 A.2d 558 (1976); Miller v. Pacific Federal Savings & Loan Association, 86 Wash.2d 401, 545 P.2d 546 (1976); Mutual Federal Savings & Loan Association v. Wisconsin Wire Works, 58 Wis.2d 99, 205 N.W.2d 762 (1973); Gunther v. White, 489 S.W.2d 529 (Tenn.1973).

Therefore, we hold that the particular clause in this case is valid and enforceable. The petitioners have not contended that there was anything wrongful or improper in the manner in which Sentry enforced the clause, only that the clause itself was unreasonable and unenforceable. Accordingly, when Arnold transferred the property without first complying with the clear terms of the mortgage, Sentry was acting within its agreed upon rights in accelerating the debt and pursuing the other remedies provided in the deed of trust.

In their second and third points of error, petitioners contend that the trial court and court of appeals erred in refusing to grant petitioners' application for writ of injunction. They argue that the undisputed facts showed a probable right and a probable injury would result if the injunction was not granted, and therefore the court of appeals erred in not holding that the trial court abused its discretion in denying the injunction.

The court of appeals applied the correct test in determining whether a trial court was in error in denying a writ of temporary injunction. "Appellate review of an order granting or denying a temporary injunction is strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order." Davis v. Huey, 571 S.W.2d 859, 861–862 (Tex.1978). In light of our holding on the issue of the enforceability of the clause, it can hardly be said that the trial court abused its discretion in denying the writ for a temporary injunction.

The judgment of the court of appeals is affirmed.

SPEARS, J., files concurring opinion in which CAMPBELL, RAY and WALLACE, JJ., join.

SPEARS, Justice, concurring.

Although I concur in the result reached by the majority, I must respectfully dissent from the rule established. The rule adopted by the majority—that a restraint must come within narrow categories enunciated in section 404 of the Restatement of Property—may foreclose review under restraint principles of a myriad of oppressive contractual provisions which are not before us now. I would recognize the true effect of the clause and declare it a restraint in accordance with the intent of the Restatement and the public policy behind it. However, because the clause before us has not been demonstrated to be an unreasonable restraint upon the alienation of Arnold's property, I would affirm the judgments of the courts below.

The majority opinion does not discuss the facts of this case; however, these facts are important to an understanding of the court's decision.

Arnold is a corporation all of whose stock is owned by Edward Lee Arnold. Edward Arnold is a builder and developer of real estate. In July of 1978, Arnold executed a deed of trust to Sentry Savings Association. The deed of trust impressed a lien upon real estate purchased by Arnold through a loan from Sentry. The lien secures payment of Arnold's promissory note to Sentry in the principal sum of $187,500.00 bearing interest at the rate of 9.75% per annum. Paragraph 19 of the deed of trust contained the language at issue in this suit:

19. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER: ASSUMPTION. On sale or transfer of (i) all or any part of the Property, or any interest therein, or (ii) beneficial interests in Borrower [Arnold]

(if Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity), Lender [Sentry] may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. This option shall not apply in case of

\* \* \* \* \* \*

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, *including, if required by Lender, an increase in the rate of interest payable under the Note.* (emphasis added)

The language of paragraph 27 of the deed of trust permits the lender to invoke the power of sale afforded by the deed of trust without prior judicial hearing.

Arnold negotiated a sale of the Lubbock property to Foxmoor of California and Neil Gamber. Arnold informed Sentry of the impending sale, and Sentry agreed to allow assumption of the note by Foxmoor provided Arnold and Foxmoor agreed to a higher rate of interest. Foxmoor, a limited partnership, was also required to incorporate so that the higher rate of interest would not violate Texas usury laws. In order to avoid the conditions imposed by Sentry, Arnold restructured the transaction so that no assumption would take place. Arnold sold the property but remained liable to Sentry on the original note. In partial payment for the property, Arnold received a note from Foxmoor in the sum of $266,000 and bearing interest at 10% per annum, a rate higher than that charged Arnold by Sentry.

Sentry timely notified Arnold of his failure to comply with paragraph 19 of the deed of trust and that it had decided to exercise its power of sale under that instrument.

Arnold brought suit to enjoin the sale of the property by Sentry, contending that paragraph 19 is invalid as an unreasonable restraint upon the alienation of property. The trial court granted a temporary restraining order but on hearing denied a temporary injunction. The court of appeals affirmed the denial of the temporary injunction, holding that the clause does not constitute an unreasonable restraint.

Arnold contends paragraph 19 is an unreasonable restraint upon alienation unless the lender proves enforcement of the clause is reasonably necessary to protect against impairment of the lender's security.

The majority holds that the clause in question does not restrain the alienation of Arnold's property at all, relying upon a strict interpretation of section 404 of the Restatement of Property. The Restatement text provides that a promissory restraint results when a provision attempts "to impose contractual liability on the one who makes the conveyance when such liability results from a breach of an agreement not to convey." Restatement of Property § 404(1)(c) (1944). The majority holds that the clause in question in this case is not a restraint because it does not contain an *express covenant* not to convey and thus does not fit squarely and neatly within section 404(1)(c) of the Restatement. The majority treats the language of section 404 of the Restatement of Property, written almost 40 years ago, as a statement of every possible manner in which the free alienation of property can be restrained. This is not the effect of the Restatement at all. The introductory comment to section 404 provides:

> The modern law has developed many restrictions against interferences with the alienability of property. A person by the terms of his conveyance or by contract may seek in many ways to eliminate the power of his successors, or of the present owners, to convey or lessen the likelihood of their exercise of this power. *If he does this by stating such legal conse-*

quences of an attempt later to convey, that these consequences, if permitted to ensue, would lessen the likelihood of such conveyance, he is attempting to interfere with the freedom of alienation in a manner which is within the scope of the rules stated in this Part. Such type of interference with the freedom of alienation is designated in this Restatement as a restraint on alienation.

Restatement of Property § 404, *introductory comment* (emphasis added).

A leading article in this area has analyzed the due-on-sale clause as a restraint and has concluded:

[T]he due-on-sale clause does not fit exactly within any of the established categories of direct restraints, disabling, forfeiture, or promissory. Yet it would appear that *the due-on-sale clause is so closely akin to the promissory restraint as to justify designating it a direct restraint.* * * * Although written as an acceleration clause, *the due-on-sale clause burdens the mortgagor's ability to alienate as surely and as directly as the classical promissory restraint.* As such the due-on-sale clause is truly a direct restraint insofar as the category of direct restraints can be articulated.

Volkmer, *The Application of the Restraints on Alienation Doctrine to Real Property Security Interests,* 58 Iowa L.Rev. 747, 773–774 (1973) (emphasis added). *See Holiday Acres No. 3 v. MidWest Federal Savings and Loan Ass'n,* 308 N.W.2d 471, 484 (Minn. 1981); *Nichols v. Ann Arbor Fed. Savings & Loan Ass'n,* 73 Mich.App. 163, 250 N.W.2d 804, 805 (1977); *Sanders v. Hicks,* 317 So.2d 61, 63 (Miss.1975); *Baker v. Loves Park Savings & Loan Ass'n,* 61 Ill.2d 119, 333 N.E.2d 1, 4 (1975).

The clear intent of the Restatement was to apply the rules governing restraints upon

alienation to any provision triggered by a conveyance of property which imposes a significant contractual liability upon the party making the conveyance. A clause such as the one before us imposes a new and onerous contractual liability upon the mortgagor in that upon conveyance he is liable for the entire indebtedness at once rather than a regular installment.[1] Moreover, in examining a clause to determine whether it restrains alienation, we must look to the contract as a whole and not solely to the due-on-sale clause. The restraining effect of the clause may be even more pronounced if the contract also contains a prepayment penalty. Where both a due-on-sale clause and a prepayment penalty are present, the homeowner is forced to pay a penalty for conveying his property even if his buyer obtains new financing and retires the original debt.

Even if the lender waives the option to accelerate in return for an increased interest rate, the clause still inhibits the transfer. Faced with the lender's demand for more interest, the buyer will surely insist upon a lower purchase price. The mortgagor must now choose between either lowering his price and absorbing the loss in his equity interest, or refusing to go through with the sale at all. *See Wellenkamp v. Bank of America,* 148 Cal.Rptr. 379, 582 P.2d 970, 975 (Cal.1978); 27 Stan.L.Rev. 1109, 1113 (1975). Thus there can be little doubt that the provision in question does, in this time of rising interest rates, lessen the likelihood that property will be conveyed.

The majority would have the validity of a clause depend upon the precise wording used to impose the acceleration penalty rather than the restraining effect of the provision. The hypertechnicality of the majority's approach is illustrated by footnote 4

---

1. The majority opinion holds that the clause in question does not impose contractual liability because Arnold is not, by reason of its violation, "subject either to damages, or, in a proper case to equitable relief by way of specific performance or injunction or some combination of those types of relief." Restatement of Property

§ 404, *comment a.* The majority ignores the fact that both Sonny Arnold, Inc. and its owner Edward Lee Arnold are as a result of the conveyance subject to personal liability for the entire amount of the debt. Moreover, Arnold is subject to the equitable remedy of acceleration and foreclosure.

of the opinion. Footnote 4 implies agreement with the Mississippi court that a contract constitutes a restraint if it provides: "The within property shall not be sold or encumbered without the express written consent of the within mortgagees . . . ," and that any breach of this provision gives the trustee the option of foreclosing the lien created by the deed of trust. *See Sanders v. Hicks*, 317 So.2d at 62. However, a clause such as the one in the present case which states that "On sale . . . lender may declare all of the sums secured by this Instrument to be immediately due and payable, . . ." and provides for foreclosure of the deed of trust is held to be no restraint at all. The same promise not to convey found in the Mississippi case is *implicit* in the present clause. More importantly, there is absolutely no difference in the restraining effects of the two clauses. Both impose the same contractual penalty of acceleration and foreclosure upon any attempted conveyance.

The majority opinion relies heavily upon a decision of the Supreme Court of Washington, *Miller v. Pacific First Federal Sav. & Loan Ass'n*, 545 P.2d 546 (1976). However, far from adopting the absolute position of the majority, holding that the clause does not constitute a restraint at all, Washington has adopted a flexible approach which examines each clause to determine whether it is a reasonable restraint, as is evident from a decision from that court handed down later in the same year as *Miller. See Bellingham First Federal Savings and Loan Ass'n v. Garrison*, 553 P.2d 1090 (Wash.1976). In *Bellingham*, the Washington Supreme Court held a due-on-sale clause to be an unreasonable restraint upon alienation unless enforced to protect the lender's security, electing to follow the California view.[2] Thus, the Supreme Court of Washington has retreated from the abso-

lute position espoused by the majority opinion. I cannot understand why the majority adopts language from the Washington court which that court has, in effect, already abandoned.

I would recognize the restraining propensity of the clause and proceed to analyze the reasonableness of the provision. This approach has been taken by several courts which have upheld a due-on-sale clause as a reasonable restraint upon alienation. *E.g. Holiday Acres No. 3 v. Midwest Federal Savings and Loan, supra; Malouff v. Midland Fed. Sav. & Loan Ass'n*, 509 P.2d 1240 (Colo.1973); *Baker v. Loves Park Savings & Loan Ass'n, supra.*

The mere fact that a contractual provision may restrain the alienation of property does not mean that the provision is *per se* invalid. It is only *unreasonable* restraints upon alienation which are not enforced. As we stated in *Mattern v. Herzog* :

It will not do to mechanically apply the rule applicable to disabling restraints and thus inhibit the employment of desirable contractual and testamentary provisions and unnecessarily circumscribe the freedom of contract and the power of testamentary disposition. Before the option may be stricken it must appear that it bears some relationship to the evil which the rules governing undesirable restraints are designed to prevent.

367 S.W.2d 312, 320 (Tex.1963). The Restatement of Property also recognizes the rule of reason in restraint cases. Under the Restatement, a restraint will be enforced,

if the objectives behind the imposition of the restraint are sufficiently important to outweigh the social evils which would flow from the enforcement of the restraint or if the interference with the power of alienation is so insignificant that no appreciable harm results from the enforcement of the restraint.

---

**2.** The clause in *Miller* did not contain the express covenant which the majority holds to be the *sine qua non* of any restraint analysis. This fact was not, however, mentioned in *Miller* or *Bellingham* as a factor for determining whether a clause is a restraint at all. The sole distinguishing factor relied upon by the court in *Bellingham* was the failure of the *Bellingham* clause to include an express provision for an increase in interest as was present in *Miller.*

Restatement of Property § 410, *comment a* at 2429.

An examination of a clause which restrains alienation is similar to examination of a contract which restrains trade and competition. The court examines the clause contended to be a restraint and determines as a matter of law whether the clause is reasonable. *See Frankiewicz v. National Comp Associates,* 633 S.W.2d 505 (1982); *Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327 (Tex.1981); *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960).

Arnold contends the only legitimate purpose for invoking a due-on-sale clause is to protect the lender's security interest in the property in question. I do not agree. In the final analysis, the justification for the due-on-sale clause as a tool for protecting the lender's security interest and as a means of exacting a higher interest rate are the same—maintaining business profits. Moreover, it is in the interest of the public generally that parties such as those in the present case have at their disposal an efficient means of adjusting interest rates to meet the demands of market conditions. The borrower benefits from the ability to contract as Arnold did because he undoubtedly will receive a lower interest rate over the life of his debt than would be given if the lender were locked into an assumable mortgage. The lender of course benefits from its ability to update its loan portfolio. The clause in question in this case thus provides a useful method of allocating risks in a time of spiraling interest rates. The utility of the clause to which Arnold and Sentry agreed outweighs the inherent restraint upon alienation which results from the bargain.

Arnold relies upon several cases from other jurisdictions which have refused to enforce contractual provisions generically referred to as "due-on-sale" clauses unless the

lender shows his security interest will be impaired by the sale. *Wellenkamp v. Bank of America, supra; Patton v. First Fed. Savings and Loan Ass'n of Phoenix,* 118 Ariz. 473, 578 P.2d 152 (1978); *First Fed. Savings and Loan of Englewood v. Lockwood,* 385 So.2d 156 (Fla.App.1980); *Tucker v. Pulaski Fed. Savings and Loan Ass'n,* 252 Ark. 849, 481 S.W.2d 725 (1972); *Nichols v. Ann Arbor Fed. Savings & Loan Ass'n, supra; Bellingham First Fed. Savings & Loan Ass'n v. Garrison, supra; Sanders v. Hicks, supra.* However, these cases are unpersuasive in the present case. The clauses in all of the cases cited by Arnold with the exception of the Arizona decision were significantly different from the one before us today.[3] These clauses did not contain the specific provision for an increase in interest as is provided in the Arnold-Sentry contract. The clauses at issue in those cases may operate with surprise and a resulting harshness not present in the case before us.

In fact, [such a] due-on-sale clause even if read by the borrower, does not convey the notion that waiver fees might be exacted or a higher interest rate demanded if the borrower dares to sell his property. Insofar as the due-on-sale clause would be justified as a disguised variable-rate mortgage, the fact remains that the element of disclosure is lacking.

*Volkmer, supra,* at 799; *Nichols v. Ann Arbor Fed. Sav. & Loan Ass'n, supra,* 250 N.W.2d at 809.

An important factor in determining the justification for a restraint is whether the restraint is exercised in an arbitrary or oppressive manner. *See* RESTATEMENT OF PROPERTY § 406 comment *i.* An acceleration clause which is exercised for reasons not specified by the parties is said to be inequitably, arbitrarily, or oppressively exercised and thus an unenforceable restraint. *Tucker v. Pulaski Sav. & Loan Ass'n, supra,* 481 S.W.2d at 729; *Nichols v.*

---

**3.** The Arizona decision involved construction of a specific statute regulating due-on-sale clauses, Arizona Revised Statute § 33–806.01(C).

Because of the express statutory provision involved in that case, it is not relevant to our present inquiry.

*Ann Arbor Fed. Sav. & Loan Ass'n, supra,* 250 N.W.2d at 808–809; *Continental Fed. Sav. & Loan Ass'n v. Fetter,* 564 P.2d 1013, 1018–1019 (Okla.1977). Where a broad acceleration clause does not specifically provide for an increase in interest, many courts have not allowed enforcement of the clause to obtain increased interest. Because the due-on-sale clause is contained in a deed of trust, a security instrument, and because the due-on-sale clause is traditionally said to have been a device to insure that the mortgagee's security interest is not damaged by a sale to an uncreditworthy buyer, courts have construed the clause so that it may be enforced only if the lender shows that his security interest will be impaired by the impending sale. *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (Cal.1974); *Nichols v. Ann Arbor Fed. Sav. & Loan Ass'n, supra; Tucker v. Pulaski Fed. Sav. & Loan Ass'n, supra; Bellingham First Fed. Sav. & Loan Ass'n v. Garrison, supra; Continental Fed. Sav. & Loan Ass'n v. Fetter, supra.* See also *Silver v. Rochester Savings Bank,* 73 A.D.2d 81, 424 N.Y.S.2d 945 (N.Y.App. Div.1980); *First Fed. Sav. & Loan Ass'n of Englewood v. Lockwood, supra; Tierce v. APS Co.,* 382 So.2d 485 (Ala.1980, Torbert, C. J., dissenting) (the latter opinions refuse to enforce a broad due-on-sale clause for the purpose of increasing interest strictly on contractual or equitable grounds).

The clause in question in the present case is not oppressively exercised or misconstrued when applied to obtain an increased interest rate; that is its expressed purpose. Arnold and Sentry bargained as set out in their written contract. There is no sufficient public policy reason to enforce the contract differently from the manner agreed upon by these parties.

The majority opinion has applied an antiquated and overly formalistic approach to determining whether a contract constitutes an invalid restraint upon alienation. It has proceeded, in contravention of our own pronouncement in *Mattern v. Herzog,* "to me-chanically apply the rule" concerning restraints. As a result, the majority has foreclosed review under restraint principles of numerous contractual provisions which we cannot now imagine but which may restrain the alienation of property as clearly and as effectively as any provision precisely described by section 404 of the Restatement. This court should not allow the merits of the present case to bring about a rule that is overly broad in upholding provisions which are alleged to be improper restraints upon the free alienation of property. Therefore, while I concur in the result of this case, I cannot agree with the rule established by the majority.

CAMPBELL, RAY and WALLACE, JJ., join in this opinion.

