EASTERN ACCEPTANCE CORPORATION, A CORPORATION, PLAINTIFF, v. FREEMAN A. GODFREY, AS SOLE SURVIVING PARTNER OF THE CO-PARTNERSHIP OR FIRM DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF GODFREY-KEELER COMPANY, DEFENDANT.

Decided March 3, 1936.

For the plaintiff, *Arthur T. Vanderbilt.*

For the defendant, *Landau & Mehler.*

PORTER, C. C. J.   The motion before me, as a Supreme Court commissioner, is to strike part of the answer and the counter-claims.

The complaint alleges:

(1) That the plaintiff is a New Jersey corporation with its principal office in Newark.

(2) That the defendant, Freeman A. Godfrey, was a partner of William Keeler doing business as Godfrey-Keeler Company, and that since the death of Keeler, October 15th, 1933, he became sole surviving partner of said firm.

(3) That on various dates the plaintiff purchased from the defendant certain therein described unmatured promis-

sory notes made payable to the defendant, which notes were duly endorsed by the defendant and his said partner and which are still owned by the plaintiff.

(4) That said notes upon maturity were duly presented for payment and payment refused, notice of which was given the defendant firm.

(5) That on October 28th, 1931, a written contract was entered into between plaintiff and defendant firm, wherein the plaintiff agreed to buy and the defendant firm to sell certain promissory notes, which notes the defendant firm warranted would be paid, notice of demand and protest being waived by defendant firm; that all of the notes in suit were purchased under the terms of said contract.

(6) That certain attorney's fees and expenses have been and will be incurred in the collection of said notes.

Recovery is sought for the amount due.

The answer admits certain of the allegations and says:

(1) That certain of the notes were paid.

(2) That certain of the notes were delivered to the plaintiff by the defendant without consideration.

(3) That the transactions were not the purchase and sale of the notes, but the discount of same; that such was an illegal transaction because the defendant was not authorized to discount notes, not having the powers of a bank.

(4) That the discounts took place in the State of New York contrary to the laws of that state and therefore are void.

(5) That the transactions were void and unenforceable under the laws of New York because usurious.

The counter-claims are based upon allegations that the plaintiff retained for itself part of the proceeds of the discount of the notes, some of which have been paid to the plaintiff by the makers. None of said retained moneys have been paid to the defendant.

From the pleadings, affidavits, and briefs before me, it appears that the transactions between the parties were the quite general ones between a finance company, so-called, and a merchant whereby, in effect, the plaintiff, the finance com-

pany, furnished funds to the customers of the merchant, the defendant. The practice was for the defendant to sell goods under conditional sales agreements and to accept notes of the customers for part of the consideration made payable to them and to endorse same over to the plaintiff with an assignment of the sales agreements as security. The plaintiff would then pay over to the defendant the amount of the notes, less a portion which was retained by it as further security.

At the inception of this arrangement a written contract was entered into between the parties to the suit, which contract sets forth the conditions under which business was to be transacted between them. This contract is dated October 28th, 1931. It is apparent that this contract was entered into in good faith by both parties, that considerable business was transacted under it, and it may be assumed, nothing to the contrary being shown, that its terms and conditions were complied with for a time, at least, until this controversy arose.

The defendant repudiates the contract, arguing that it is an illegal one and has therefore no binding effect, but agrees in his brief that it evidences, however, the intention of the parties. That is true. Considering the question of where the transactions took place and whether the laws of this state or of New York are to govern and considering the proofs before me, together with the contract, which specifically provides in clause 6 that the laws of New Jersey shall govern as to "validity, enforcement, interpretation, construction, effect and in all other respects," I am of the opinion that the laws of this state apply. No question of fact is presented on that point. Nor do I find any question of fact raised on the matter of consideration.

That brings me to the main question which is raised; that the notes were not purchased as alleged but were in fact discounts. On the proper answer to this question hinges the solution of the case.

A review of the many cases cited in both briefs, together with the facts before me, lead me to the conclusion that the notes were purchased and that the parties clearly so intended

by their said contract and by their conduct. *General Motors Acceptance Corp.* v. *Midwest Chevrolet Co., 66 Fed. Rep. (2d) 1; Meserole Securities Co.* v. *Cosman,* 234 *N. Y. Supp.* 264; *Brittin* v. *Freeman,* 17 *N. J. L.* 191.

The plaintiff did not, in my opinion, engage in the banking business under the facts in this case. Not only were the notes not discounted but also it did not come within the statutory definitions of a banker by reason of its retention, under the circumstances, of a portion of the moneys involved.

Construing section 6 of our Banking act (1 *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 118, § 17-6), together with section 3 of our General Corporation act (2 *Comp. Stat., p.* 1600), it seems clear that the legislative intent was to define a bank as one conducting the business of banking, by not only the discounting of bills, notes, &c., but by receiving deposits. There can be no bank if there are no deposits. That is its primary and one of its most important and necessary functions. Its deposits, rather than its capital, furnish its life blood and enable it to function as a bank. In the instant case the moneys retained are not deposits nor do they serve the same purpose as deposits as in the usual banking business. Here it is the capital furnished by the stockholders of the plaintiff corporation which is used in the business, not deposits. This is so, even though these retained moneys may be used in the business. The primary purpose of retaining same is as security and not to build up a fund for further transactions even though incidentally the moneys may be so used. The mere fact that the plaintiff holds itself out on its printed stationery as being "bankers," which is the fact, while inconsistent with its denial here, does not under all the facts constitute it a banker within the legal meaning of that term.

But quite aside from these views, it is not disputed, as before stated, that there was a contract entered into and under which the parties hereto operated. The defendant received the benefits thereof. The transactions were not void even though it may be said they were unauthorized by plaintiff's charter and so an *ultra vires* act. The doctrine of

estoppel applies and the defendant may not be heard in defense on the ground of the illegality of the transaction. *Earle* v. *American Sugar Refining Co.*, 74 *N. J. Eq.* 751; 71 *Atl. Rep.* 391; *Treacy* v. *Vigersky*, 10 *N. J. Mis. R.* 410; 159 *Atl. Rep.* 312; *Campbell* v. *Perth Amboy Ship Building, &c., Co.*, 70 *N. J. Eq.* 40; 62 *Atl. Rep.* 319; *Fritz* v. *Palmer*, 132 *U. S.* 282; *Camden A. Railroad Co.* v. *Mays Landing, &c., Railroad Co.*, 48 *N. J. L.* 530; 7 *Atl. Rep.* 273.

These views lead to the conclusion that the defenses mentioned and the counter-claims are without legal merit and must be struck.