101 N.J. Super. 283 (1968)
244 A.2d 151
BENJAMIN SHALIT AND MILDRED SHALIT, PLAINTIFFS,
v.
INVESTORS SAVINGS AND LOAN ASSOCIATION, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued May 3, 1968.
Decided May 15, 1968.
*284 Mr. Julius Stein for plaintiffs (Messrs. Stein & Stein, attorneys).
*285 Mr. John P. Walsh for defendant (Messrs. Herrigel, Bolan and Herrigel, attorneys).
The opinion of the court was delivered by ANTELL, J.S.C. (temporarily assigned).
Plaintiffs sue for $14,635 which they paid for defendant's waiver of its right to accelerate payment of a certain bond and mortgage executed by plaintiffs. Plaintiffs argue that the payment is usurious, was made under duress, and that the receipt thereof exceeded defendant's authority under the laws governing Savings and Loan Associations. On this motion by defendant for summary judgment the following material facts appear:
Plaintiffs, a builder and his wife, executed a bond for $320,000 secured by a mortgage on August 1, 1962 in order to finance the construction of a multi-unit dwelling on Bloomfield Avenue in Verona, New Jersey. The mortgage provided:
"* * * if there shall be any change in the ownership of the mortgaged property, then and in such event, the aforesaid principal sum with accrued interest shall, at the option of the Mortgagee, become due and payable immediately, anything herein contained or contained in the bond to the contrary notwithstanding."
On December 22, 1966 plaintiffs, through their counsel, advised defendant in writing that they had entered into a contract to sell the premises subject to the mortgage. Noting the acceleration clause in the mortgage, the letter asked that defendant:
"* * * advise us under what conditions you will waive your right to accelerate the payment of the principal and interest and permit the assumption of the mortgage by the Purchaser. If an arrangement can be entered into for that purpose, we will appreciate it if you will forward to us several applications to be completed by the prospective Purchaser."
Following short negotiations a payment by plaintiffs in the amount of $14,635 was agreed upon in exchange for the *286 defendant's consent to transfer of title without calling the mortgage. An assumption agreement was thereafter executed by plaintiffs' successor in title, 70 Park Avenue, Inc., and the agreed upon premium paid by the plaintiffs on February 13, 1967. Demand for the return of the premium monies was made on behalf of plaintiffs under date of March 8, 1967 by the same counsel who represented the plaintiffs throughout the transaction. The letter of demand stated: "It is our opinion that the payment demanded by you was unjust and inequitable and constitutes payment under duress". Defendant has refused to return the monies demanded.
As noted, plaintiffs contend that the premium payment constituted a usurious charge by the defendant, that the defendant was not lawfully empowered to receive such payment and that the payment aforesaid was made under duress.
It has long been settled that if a note or security is valid when made, no subsequent act can make it usurious. Donnington v. Meeker, 11 N.J. Eq. 362, 365 (Ch. 1857). In Bloomfield Sav. Bank v. Howard S. Stainton & Co., 60 N.J. Super. 524, 532 (App. Div. 1960), the court stated that it was "totally without justification" to characterize the payment of money for the privilege of prepaying a mortgage loan as usurious. The principle of that decision appears to govern here inasmuch as in both cases the premium was paid by the mortgagor, not as interest "for loan of any money" (N.J.S.A. 31:1-1), but to induce the surrender of a right enjoyed by the mortgagee. In the Bloomfield Savings case the mortgagee yielded its right to continue the investment of its funds. Here, the mortgagee relinquished its right to call in the full amount of the principal balance for reinvestment at more favorable rates of interest. Hence I conclude that the payment sought to be recovered is not usury.
In his answering affidavit plaintiff builder recites that prior to executing the bond and mortgage he received certain construction mortgage monies from the defendant for which he paid total fees of $6,500. Prior to closing the permanent loan on August 1, 1962 it came to his attention that *287 the mortgage papers contained the controversial acceleration provision. Plaintiff states he objected to it strenuously and thereafter conferred with an officer of the defendant concerning its purport. He states, further, that he was assured by the officer that the only purpose of the clause was to reserve to the defendant an opportunity to check the moral and financial worth of any proposed buyer and that the defendant would not accelerate the loan if such a buyer were found to be financially and morally satisfactory. Relying on these assurances, and having in mind the $6,500 he had already invested in the mortgage application and that the construction mortgage of $320,000 was already in default, he did not
"* * * consider it economically feasible to attempt to get a permanent mortgage from another source. In addition, even if I was able to secure a permanent mortgage from another source, I would have had to pay Investors an additional penalty of $6,400. This provision was contained in the construction mortgage which I executed, as above indicated."
Plaintiff continues that by the fall of 1966 he had become involved in other undertakings and "needed additional cash to purchase the development and to pay off obligations that I had incurred." He determined, therefore, to sell the Verona property and entered into a series of agreements through intermediary corporations, the details and purposes of which are not here relevant, in order to transfer title ultimately to 70 Park Avenue, Inc. He brought the proposed sale to defendant's attention around December 22, 1966 and, as plaintiff says, he then learned for the first time that the defendant insisted upon the payment of a premium in consideration of its agreement to forego calling the loan. He was told firmly that defendant would not approve any buyer regardless of its financial condition unless the premium was paid. This put him "in a tough spot." He was badly in need of cash and had no alternative but to agree to the premium complained of.
*288 On these asserted facts plaintiffs rest their claim that the monies were paid under duress. I find, however, that although it is inferable therefrom that plaintiffs' judgment was guided by difficult and compelling business exigencies, these allegations do not authorize the inference of a will so overborn and paralyzed as to preclude the exercise of an essentially free and unconstrained volition. I conclude as a matter of law that the claim of duress cannot be supported under applicable principles. Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 544 (1958); Rubinstein v. Rubinstein, 20 N.J. 359 (1956); Ewert v. Lichtman, 141 N.J. Eq. 34 (Ch. 1947).
I further conclude that the conversations referred to are inadmissible parol and not receivable within any of the recognized exceptions. Atlantic Northern Airline, Inc. v. Schwimmer, 12 N.J. 293, 301-303 (1953); Union Fur Shop, Inc. v. Max Melzer, Inc. 133 N.J. Eq. 416, 419 (E. & A. 1943); Garden State Plaza Corp. v. S.S. Kresge, 78 N.J. Super, 485, 495 et seq. (App. Div.), certification denied 40 N.J. 226 (1963). Fraud is not alleged nor does any ambiguity appear from the chosen language. The proffered evidence would not serve the purpose of interpreting debatable language. Rather, it would import into the clause a condition precedent entirely alien to its express written terms.
Citing N.J.S.A. 17:12B-48, plaintiffs also maintain that it was beyond the statutory power of the defendant to demand and receive the premium payment. This enactment provides:
"Without limiting the generality of the foregoing, every association shall have power to * * * (10) take from its members, a premium for priority or privilege of loan or acquisition of real estate and no premium so taken shall be deemed usurious. The rate of premium may be agreed upon or be determined by auction." (Emphasis supplied)
*289 It is argued that since the foregoing provision is operative only in connection with the making of loans, it furnishes no authority for defendant to take the payment in return for the waiver of an acceleration privilege. Because no specific grant of such authority is categorically enumerated elsewhere in the Savings and Loan Associations Act, the conclusion is urged that by bargaining for and receiving the payment the defendant acted ultra vires. Obviously, this reasoning cannot stand side by side with the plaintiffs' claim of usury since, as they themselves aver, usury postulates the making of a loan. Moreover, it presupposes the necessity of a specific grant of statutory authority for a savings and loan association to execute this particular kind of transaction. But the preceding section of the statute, section 47, provides:
"Every association shall have all of the powers conferred by this act, both expressed and implied, and such others as are incidental thereto, and incidental or necessary to the operation of its business and the attainment of its purpose. Such powers shall be exercised in conformity with the provisions contained in this act."
The authorized purposes of a savings and loan association are stated in N.J.S.A. 17:12B-12:
"Associations operating under the provisions of this act shall be mutual associations for the purpose of promoting thrift, home ownership and housing."
It is concluded that the right to receive a payment of money in exchange for its mortgage acceleration privilege is within those powers at least incidental and necessary to the business of a savings and loan association and the attainment of its purpose as such. The object of clause (10), section 48, which authorizes the taking of a payment for a loan, is to remove from the Usury Act, N.J.S.A. 31:1-1 et seq., transactions which would be otherwise forbidden by its terms. It does not imply a prohibition upon all business measures and activities which are not specifically sanctioned by statute. E.g. Paley v. Barton Savings and Loan Ass'n, 82 *290 N.J. Super. 75, 81 (App. Div.), certification denied 41 N.J. 602 (1964). It would further appear that plaintiffs are estopped to assert this claim. Eastern Acceptance Corp. v. Godfrey, 14 N.J. Misc. 187, 183A 822 (Sup. Ct. 1936); Treacy v. Vigersky, 10 N.J. Misc. 410, 159A 312 (Sup. Ct. 1932).
Since it is palpably shown from the pleadings and depositions and affidavits on file that there is no genuine issue as to any material fact challenged, I conclude that the defendant is entitled to judgment as a matter of law.
Motion granted.