888 F.2d 127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EYDE BROTHERS DEVELOPMENT COMPANY, Plaintiff-Appellant,
v.
THE EQUITABLE LIFE ASSURANCE SOCIETY of the UNITED STATES,
Defendant-Appellee.
 No. 88-2197.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1989.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and WILLIAM O. BERTELSMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff is a Michigan development company which brought a diversity action in federal court to recover money paid to the defendant under contractual agreements between the two parties. Plaintiff argued to the district court that it was entitled to recover default charges and interest it paid, notwithstanding its own breach of the contract, because plaintiff's breach allegedly occurred only after the defendant first breached the contract. The district court granted the defendant's motion for summary judgment, finding that the defendant's allegedly improper conduct was not prohibited by the contract between the two parties. Finding no error in the district court analysis, we affirm.
 
 I.
 
 2
 This dispute arises out of a note and mortgage agreement between Eyde Brothers Development Company (Eyde) and the Equitable Life Assurance Society of the United States (Equitable). In 1978, Eyde decided to embark on a plan for developing an apartment complex. Eyde required financing in order to carry out its development plan, so it borrowed $6,000,000 from Equitable. The two parties negotiated a detailed agreement, under which Equitable received a note and a mortgage on the property being developed. The note was payable over thirty years, with complete repayment of the principal prohibited during the first ten years of the loan; early repayment resulted in a substantial prepayment penalty. The note also contained a default provision, allowing Equitable to accelerate the payment of the entire principal balance and to receive 14% interest, rather than the note's standard 9.25% interest, for the period of default.
 
 
 3
 Most importantly, for purposes of this lawsuit, the mortgage between the parties contained a "due-on-sale" clause (clause 33). According to this clause:
 
 
 4
 [T]he whole of the principal sum and the interest shall become due at the option of the mortgagee upon the transfer or other disposition or encumbrance, by mortgage or otherwise, of the premises or any part thereof, or upon the occurrence of a material change in the identity or control of the mortgagor (other than through death), without the written consent of the mortgagee.
 
 
 5
 (App. 18). No other provisions in the note or mortgage addressed the subject of Equitable's consent to proposed transferees.
 
 
 6
 In November 1985, plaintiff notified Equitable that plaintiff had located a qualified buyer for the property. Plaintiff requested Equitable's written consent, allowing the new buyer simply to assume Eyde's mortgage. With very little discussion of its reasons for making this decision, Equitable notified Eyde that Equitable would not consent to the assumption.
 
 
 7
 Because Eyde was displeased with this decision, the two parties attempted to reach some form of compromise. On November 21, 1985, an Equitable officer, Thomas G. Fleming, sent a letter to Eyde indicating that Fleming would be willing to "recommend to our home office" a plan which would allow Eyde to repay the entire loan, and which would waive prepayment penalties, the ten-year closed prepayment period, and the requirement of sixty-day notice. The last substantive sentence of the letter cautioned Eyde that "[d]ue to the policy changes from time to time, the recommendation should be sent to our home office within 90 days of the date of this letter."
 
 
 8
 While Eyde decided to act upon the proposed resolution in the Fleming letter, and set about obtaining alternative financing in order to pay off the loan, Eyde did not communicate to Equitable its intent to travel this route until March 1986. At this time, Fleming notified Eyde that interest rates had changed, resulting in a change in policy, so the home office would not accept Eyde's penalty-free repayment.
 
 
 9
 On March 27, 1986, Eyde sent a letter to Equitable offering to repay the entire obligation at the interest rate contained in the note, with no prepayment charges and with no additional interest. Although this letter requested a response, Equitable did not reply.
 
 
 10
 After making the March 27 "tender" to Equitable, Eyde ceased making payments on the note. While the defendant attempted to negotiate with Eyde in order to reach a resolution other than foreclosure, Eyde insisted upon paying the entire balance without penalties. In October 1986, Equitable elected to accelerate the entire balance, including penalty interest as a result of the default and prepayment charges stemming from the fact that the balance was paid off during the first ten years.
 
 
 11
 Eyde filed this action on November 19, 1986. Eyde alleged that at the time of contracting, it had been led to believe, based on representations made by Equitable and by past practice, that Equitable would not refuse to consent to an assumption without good reason. While Eyde did not dispute Equitable's right to accelerate repayment when the mortgagor sold without Equitable's consent, Eyde argued that the parties had agreed that Equitable's consent could not be withheld unreasonably. According to Eyde's amended complaint, Equitable's refusal to consent to Eyde's proposed transfer was unreasonable and in breach of the contract. Eyde thus sought recovery of default interest charged, recovery of prepayment penalty charges, damages equal to the amount spent procuring alternative financing, and a declaration that portions of the note and mortgage are invalid as unreasonable restraints upon alienation.
 
 
 12
 Eyde paid the entire amount requested by Equitable on December 26, 1986. Eyde provided this payment under protest and reserved fully the right to pursue the lawsuit.
 
 
 13
 In June 1987, plaintiff served a set of interrogatories on Equitable. The lengthy interrogatories and instructions sought to obtain details relating to assignments, refinancings, prepayment charges, and Equitable's objections to assumptions on all real estate notes and mortgages issued by Equitable since 1978. Equitable asserts that complying with this request would have necessitated the physical retrieval and analysis of more than 15,000 files. Based on the hardship caused by such a request, and on the fact that such information would arguably not have been relevant to the intent of Eyde and Equitable when entering into their agreements, Equitable filed a motion for a protective order. The district court granted this motion.
 
 
 14
 In June 1988, defendant filed a motion for summary judgment as to all of plaintiff's claims. The district court granted the defendant's motion on all but one claim, on which it entered judgment against the defendant. The district court ruled that the due-on-sale clause of the contract was clear and unambiguous, and imposed no limitation on Equitable's right to refuse consent. The court thus decided, as a matter of law, that plaintiff's proposed interpretation could not prevail, meaning the defendant had not breached the contract, and was thus entitled to receive default interest. The court also approved of the amount of default interest charged by Equitable. In addition, the court rejected Eyde's claims that the note and mortgage provisions amounted to an unreasonable restraint on alienation. On the issue of prepayment penalties, however, the district court found that the defendant could not at the same time elect acceleration as a remedy for default, collect default interest, and assess prepayment charges. The amount of prepayment penalty was ordered to be returned to Eyde. Eyde now appeals the district court decisions on all issues but the prepayment charges.[1]
 
 II.
 
 15
 The most basic issue in this case is whether plaintiff's claims were appropriate for summary judgment. Eyde argues that in choosing to grant summary judgment, the district court necessarily opted not to consider plaintiff's evidence indicating that, at the time of contracting, Eyde and Equitable agreed that Equitable could not withhold consent unreasonably. Eyde asserts that the contract, which never mentions the bases upon which Equitable may or may not decide to deny consent to an assumption, is at least potentially ambiguous, if not clearly ambiguous. In a situation where there is latent ambiguity, Eyde correctly recognizes that Michigan law requires the consideration of outside evidence in the interpretation of the contract. Union Oil Co. v. Newton, 397 Mich. 486, 245 N.W.2d 11 (1976); Goodwin, Inc. v. Orson E. Coe Pontiac, Inc., 392 Mich. 195, 224 N.W.2d 53 (1974).
 
 
 16
 While we do not disagree with any of the legal principles enunciated by Eyde, we do not think they apply here because, like the district court, we are convinced that the due-on-sale clause of the mortgage is unambiguous. Basic rules of contract interpretation hold that a court may not re-write contracts to include provisions not incorporated by the parties, Shaffner v. City of Riverview, 154 Mich.App. 514, 397 N.W.2d 835 (1986), and courts may not rely upon external evidence of the parties' intent when the contract is clear and unambiguous. Grau v. Detroit Automobile Inter-Insurance Exchange, 148 Mich.App. 82, 383 N.W.2d 616 (1985); In re Bluestone Estate, 121 Mich.App. 659, 39 N.W.2d 446 (1982). In the mortgage here at issue, there is absolutely no language restricting Equitable's ability to decide whether to approve a proposed assumption. Language limiting defendant's discretion easily could have been negotiated for and included but, not being incorporated into the contract, this court is powerless to add such a limitation.
 
 
 17
 Because due-on-sale clauses are so frequently included in financing documents, this court is not the first to address the type of claim here raised by Eyde. It is interesting to note that in all located decisions involving mortgagor attempts to find ambiguity in mortgage provisions not limiting mortgagee's freedom to grant or deny consent, courts have held the due-on-sale clauses to be unambiguous. Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works, 58 Wis.2d 99, 205 N.W.2d 762 (Wis.1973); Stith v. Hudson City Sav. Inst., 63 Misc.2d 863, 313 N.Y.S.2d 804 (1970); Shalit v. Investors Sav. & Loan Ass'n, 101 N.J.Super. 283, 244 A.2d 151 (N.J.1968). The facts in Shalit are similar to those in the present case, as the plaintiff was a developer who sued when the mortgagee refused to consent to an assumption without the payment of a sizeable fee. The developer attempted to offer parol evidence to establish that the lender had agreed, at the time of contracting, to grant consent so long as the proposed buyer was financially sound, but had not lived up to this promise when a financially sound buyer was presented. The court refused to consider such evidence, holding that the clause language was clear, and that "the proffered evidence would not serve the purpose of interpreting debatable language. Rather, it would import into the clause a condition precedent entirely alien to its express written terms." Shalit, 244 A.2d at 154. We agree with the Shalit court and the district court, and find the due-on-sale clause in the present case to be unambiguous.
 
 
 18
 Summary judgment is appropriate where there are no disputed questions of material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The interpretation of an unambiguous contract is purely a question of law for the trial court. Lancaster Glass Corp. v. Philips ECG, Inc., 835 F.2d 652, 658 (6th Cir.1987); Wilson v. Home Owners Mut. Ins. Co., 148 Mich.App. 485, 384 N.W.2d 807 (1986). Because the district court decided, as a matter of law, that the mortgage provision here at issue was not ambiguous, the district court had no obligation to consider any evidence relating to alleged factual disputes. The evidence relating to negotiations regarding the granting of consent to assumptions was made irrelevant by the determination that the mortgage was unambiguous; therefore, it was not, as the plaintiff suggests, error for the district court to grant summary judgment.[2]III.
 
 
 19
 As well as arguing that summary judgment is inappropriate, Eyde also argues that the district court erred in ruling that the provisions in the note and mortgage do not amount to an unreasonable restraint on alienation. Under Michigan common law, restraints on alienation of real property are strongly disfavored, and will be approved only if they are reasonable and do not operate harshly. Nichols v. Ann Arbor Fed. Sav. & Loan Ass'n, 73 Mich.App. 163, 250 N.W.2d 804 (1977). While Eyde recognizes that Mich.Comp.Laws Sec. 445.1621 authorizes due-on-sale clauses, Eyde argues that the combination of a due-on-sale clause in the same agreement with a clause prohibiting prepayment does amount to an unreasonable restraint on alienation. Eyde points to an Oregon case in which the court arguably implied that a ten-year prepayment prohibition would be improper if it were combined with a clause prohibiting sale of the property. Hartford Life Ins. Co. v. Randall, 283 Or. 297, 583 P.2d 1126 (1978). Eyde argues that the presence of the two provisions makes it "impossible" for the initial purchaser to transfer the property during the first ten years of the mortgage.
 
 
 20
 Without attempting to establish a general rule, we agree with the district court that, on the facts of this case, the due-on-sale and prepayment provisions did not combine to amount to an unreasonable restraint on alienation. The district court accurately noted that not only are due-on-sale provisions legal in Michigan, but the general rule calling for enforcement of prepayment clauses also would appear to be applicable under Michigan law. See generally 55 Am.Jur.2d Mortgages Sec. 397 (1971). Contrary to Eyde's assertions, the district court did consider the question of whether, despite their individual validity, the combination of the two provisions in one financing arrangement was unreasonable. We agree with the district court that in this setting, involving two sophisticated business entities carefully negotiating a major financing project, the inclusion of both restrictive provisions is not unreasonable.
 
 
 21
 In fact, if one considers the defendant's reasons for including such provisions, the reasonableness of the arrangement is apparent. Whenever a long-term financing contract is entered into, the parties must allocate the risk of fluctuating interest rates. By insisting upon the due-on-sale and prepayment penalty provisions, Equitable simply negotiated the deal so that Eyde would bear this risk. If interest rates rise, Eyde would be able to sell the property to a buyer who would willingly pay a higher price in order to assume Eyde's mortgage at below-market rates. The due-on-sale clause ensures that Equitable, not Eyde, will receive the benefit from such a change. If interest rates fall, however, it would be in Eyde's interest quickly to refinance the mortgage by borrowing money at lower rates in order to pay off the higher interest mortgage with Equitable. By assessing a prepayment penalty, Equitable simply ensures that it will receive the return it anticipated, even in the face of falling interest rates. There is no prohibition of alienation--only a requirement that some penalty payment accompany the alienation so that Equitable is protected against changes in the market. Sophisticated businesspersons, as were involved in all phases of this transaction, should be permitted to allocate risks in the manner they deem to be appropriate.
 
 IV.
 
 22
 Even if its interpretation of the relevant provisions is rejected, Eyde argues that it should nevertheless be allowed to recover the default interest charged by Equitable. Eyde bases this argument upon its claims that its March 26, 1987, letter was a valid tender, and that even if not a valid tender, Equitable's lengthy delay in declaring the default was unfair. We find neither of Eyde's arguments to be persuasive.
 
 
 23
 As to the March letter, it is immediately apparent that this was not a valid tender. The offer of payment contained in the Eyde letter did not conform to the requirements of the note and mortgage, but instead embodied the terms of the proposal suggested by Fleming in November 1986. However, by the time the plaintiff submitted its "tender," the terms of the proposal had expired, as the Fleming letter expressly stated it had to be acted upon in 90 days. This was not done. Additionally, the Fleming letter clearly did not bind Equitable to its terms, but indicated merely that Fleming would be willing to propose such an arrangement to his superiors. Because of Eyde's delay in responding, the proposal was never even presented to Equitable's home office for approval. Plaintiff's suggestion that its March letter was a valid tender because it conformed to the terms of Fleming's letter is patently erroneous, as those terms never became the terms of payment under the contract. Plaintiff's position that the Fleming letter formally modified the note and mortgage is equally untenable.
 
 
 24
 Additionally, we do not find Equitable's delay--from receipt of Eyde's "tender" in March 1986 until election of a remedy in October 1986-to have been unreasonable or inequitable. Eyde stopped making payments on the note in April 1986, and Equitable notified Eyde of its default by May 1986. Additionally, Equitable did not remain inactive simply to let its default charges increase. During the six months between default and election of remedies, Equitable attempted to negotiate some compromise with Eyde. Eyde refused to pay either default or prepayment charges, despite the language of the agreements. Additionally, Equitable had to consider a number of possible remedies, and its use of the time between default and election of remedies to evaluate potential courses of action was not unreasonable. Eyde has no valid claim to recovery of the default charges.
 
 V.
 
 25
 Eyde also argues that the district court erred in granting Equitable's motion seeking protection from Eyde's discovery request. This contention has no merit. First, it is well-settled that the trial court has broad discretion in ruling on questions of discovery. Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir.1988). Additionally, even if the district court's decision had been in error, it could not possibly have affected the outcome of this case. The discovery sought by Eyde was to aid its claim that Equitable had a policy, which was communicated to Eyde, of not withholding consent to assumptions unreasonably. Because the district court ruled that the contract was not ambiguous, it makes no difference what parol evidence Eyde might be able to produce showing the intent of the parties. The court correctly found the intent of the parties to be conclusively established by the written agreements, so the evidence sought by Eyde would have been irrelevant.
 
 
 26
 The decision of the district court is, in all particulars, AFFIRMED.
 
 
 
 *
 Honorable William O. Bertelsman, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Initially, Equitable appealed from the decision as to the prepayment penalty. In its brief relating to Eyde's appeal, however, Equitable states that it is withdrawing its appeal on the prepayment penalty issue
 
 
 [2]
 Plaintiff also attempts to argue that the due-on-sale clause was modified by the letter sent by Fleming in late 1985. This argument is far off the mark. The letter did not relate to the due-on-sale clause, but to the prepayment restrictions; the proposal contained in the letter was not acted upon in a timely manner, meaning no agreement was ever reached; and there is no evidence of consideration ever being given. This was simply not a relevant or enforceable modification