Starcrest 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00264-CV







Starcrest Trust, Appellant



v.



Sam C. Berry, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT


NO. C93-381B, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING








 This is an appeal from a judgment granted in favor of appellee Sam C. Berry. Appellant
Starcrest Trust ("Starcrest") brought suit against Berry, Thomas J. Smith, and the law firm of Smith,
Barshop, Stoffer & Millsap to enjoin the non-judicial foreclosure of a deed of trust lien on certain property
to which Starcrest held legal title in Comal County. Starcrest additionally sought both a declaratory
judgment that the deed of trust lien was invalid and damages for allegedly usurious interest charged in
connection with the transaction. The trial court granted a temporary injunction preventing the foreclosure
sale. 

 Berry then filed a counterclaim against Starcrest in which he alleged that he was owed
$85,000 for funds that he advanced and sought to obtain a judicial foreclosure of his lien. The trial court
granted summary judgment against Starcrest's usury claim as well as in favor of the defendants, Thomas
J. Smith and Smith, Barshop, Stoffer & Millsap, Inc. 

 On February 3, 1995, the trial court entered a final judgment awarding Berry $85,000 in
damages and $30,046 in attorneys' fees and further ordering a judicial foreclosure of the property. 
Starcrest appeals this judgment in twelve points of error. (1) We will affirm the judgment of the trial court.



BACKGROUND


 Appellee Sam Berry is the father-in-law of Ted Ballard, the trustee of appellant Starcrest. 
This, however, is one of the few facts that is not in dispute in this case. We will present the two distinct
versions of the facts as alleged by the two parties in this case. 



Sam Berry's Version

 According to Sam Berry, Ted Ballard, who considered himself a sophisticated real estate
businessman, needed money for one of his real estate ventures in late 1986. Believing that Ballard would
pay him back, Berry followed Ballard's instructions and advanced $30,000 to Norman Jacobson to help
Ballard save a property in Bexar County. Further, in May 1989, Berry advanced $5,000 to Ted and
Barbara Ballard for family living expenses and to help pay for Ted Ballard's attorneys' fees. 

 In 1989, Ted Ballard came under federal indictment for making certain fraudulent
statements and retained Gerald Goldstein, a well-known criminal defense attorney, to represent him. 
Goldstein, however, wanted a $50,000 retainer fee. Ballard already owed Berry $35,000, and the two
reached an understanding that Berry would make further advances to Goldstein for the benefit of Ted
Ballard. So, in June 1989, Ballard told Berry that he was preparing an $85,000 note and deed of trust on
the "one piece of property that they (Ballard's creditors) can't take away from me." Barbara Ballard
prepared the note and the deed of trust, and Ted Ballard signed them. Ted Ballard, in his capacity as
trustee of Starcrest, had the note and deed of trust executed on behalf of Starcrest despite the fact that the
money was paid for his personal benefit, and the property owned by Starcrest was pledged because it was
free and clear of liens. The deed of trust was recorded, but neither the note nor the deed of trust was sent
to Berry. Barbara Ballard last saw the note on her desk in the spring of 1992 and was later told that Ted
had destroyed the original note and deed of trust. Thus, Berry did not have either of the original two
instruments in his possession.

 After the execution of the note and the deed of trust, Berry made a series of additional
advances for the benefit of the Ballards in 1989 and 1990. Some of these advances were made for
personal expenses, while others were made directly to Goldstein. In total, Berry advanced $86,000 for
the benefit of Ted Ballard, all of which was secured by the $85,000 note and deed of trust.



Ted Ballard's Version

 According to the testimony of Ted Ballard and the convoluted facts as set forth in his brief,
Berry loaned $30,000 to Country Enterprises, Inc., a corporation jointly owned by Ted and Barbara
Ballard. In exchange for this $30,000, the Ballards set up a note and deed of trust in the amount of
$348,000 "because it was not anticipated as to how much additional funding that company may need." 
Thus, even though the face of the note was $348,000, the amount actually advanced was $30,000. In July
1986, Country Enterprises, Inc. conveyed the property that was encumbered by the $348,000 deed of
trust to Starcrest by warranty deed. Starcrest took title to the property subject to the indebtedness but
without assuming it.

 In Starcrest's attempt to sell this encumbered property to Lash Publications, it became
necessary to obtain a release of lien from Berry because the bank was not willing to fund enough money
to clear a $348,000 mortgage in addition to a previous lien that was on the property. (2) On June 1, 1989,
the release of lien was executed and served to extinguish all indebtedness related to the original $348,000
deed of trust. In obtaining the release of lien, Ted Ballard told Berry that he would execute a second
interim deed of trust that could be recorded if the closing on the property did not occur or if for some
reason Berry was not paid. Ballard further told Berry that he would attempt to have Lash Publications
execute a new note and a new deed of trust so that Berry would be in the same position he was in before. 
Lash did in fact execute a new note and new deed of trust payable to Berry in the amount of $40,000,
which according to Ballard, included the original $30,000 that Berry funded to Country Enterprises plus
accrued interest. Ballard contends that the new note and deed of trust from Lash constituted a novation
which extinguished the original $30,000 obligation. Lash Publications failed to pay Berry, but instead of
foreclosing on the building, Ballard contends that Berry wrote the entire $40,000 off on his 1989 or 1990
tax return. Ballard contends that Berry, in his counterclaim, improperly asserts his rights to $85,000 under
this second interim deed of trust. 

 According to Ballard, the second interim deed of trust in the amount of $85,000 was
executed for the sole purpose of providing additional security for the payment of the indebtedness. The
release of lien extinguished all indebtedness related to the $348,000 deed of trust. Ballard contends that
there was no funding, new or old, to Starcrest, nor was there delivery to Berry of any note related to this
second deed of trust. Thus, because there was no indebtedness related to this second $85,000 deed of
trust which is the subject of this suit, it was of no force and effect.



DISCUSSION


 In its first point of error, Starcrest asserts that the trial court erred in granting judgment in
favor of Berry because the pleadings were not supported by the proof. Starcrest points out that Berry's
counterclaim alleged that "Berry loaned $85,000 to Starcrest Trust." In his testimony at trial, however,
Berry denied loaning Starcrest the $85,000 or any other amount of money, and Berry's attorney stipulated
to the same. In fact, Berry specifically testified that he loaned $86,000 for the benefit of Ted Ballard with
the expectation that Ballard would pay him back. 

 Pleadings are sufficient if they give fair and adequate notice to the opposing party. 
Acevedo v. Droemer, 791 S.W.2d 668, 669 (Tex. App.--San Antonio 1990, no writ). A variance
between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. 
Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 687 S.W.2d 8, 11 (Tex. App.--Dallas 1984,
writ ref'd n.r.e.). In the absence of special exceptions, a petition will be liberally construed in favor of the
pleader. Acevedo, 791 S.W.2d at 670. There is no actual variance between the pleadings
and the proof. The evidence at trial clearly indicated that Berry advanced $86,000 directly to, or for the
benefit of, Ted Ballard, the trustee of Starcrest. The evidence further shows that, in exchange for this
funding, an $85,000 note and deed of trust was prepared by Barbara Ballard at the direction of Ted
Ballard and then signed by Ted Ballard in the name of Starcrest. 



If a person acting, or purporting to act, as a representative signs an instrument by signing
either the name of the represented person or the name of the signer, the represented
person is bound by the signature to the same extent the represented person would be
bound if the signature were on a simple contract.



Tex. Bus. & Com. Code Ann. § 3.402(a) (Tex. UCC) (West Supp. 1996). (3) Even if there is a technical
variance between the pleadings and the proof, the pleadings gave fair and adequate notice to Starcrest and
to Ted Ballard. Further, the variance was in no way substantial, misleading, or prejudicial. Accordingly,
point of error one is overruled. 

 In its second point of error, Starcrest contends that the trial court erred in ruling that there
was a lost note because Berry failed to prove the elements of a note as required by statute. 



The owner of an instrument which is lost, whether by destruction, theft or otherwise, may
maintain an action in his own name and recover from any party liable thereon upon due
proof of his ownership, the facts which prevent his production of the instrument and its
terms. The court may require security indemnifying the defendant against loss by reason
of further claims on the instrument.



Act of June 14, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2440 (Tex. Bus. &
Com. Code Ann. § 3.804, deleted by Acts of June 16, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex.
Gen. Laws 4582, 4625). The terms that must be proved in order to recover on an instrument include: (1)
the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note;
and (4) a certain balance is due and owing on the note. Bean v. Bluebonnet Savs. Bank FSB, 884
S.W.2d 520, 522 (Tex. App.--Dallas 1994, no writ); see Bray v. Cadle Co., 880 S.W.2d 813, 817
(Tex. App.--Houston [14th Dist.] 1994, writ denied).

 In this case, the evidence indicated that Berry loaned a total of $86,000 for Ted Ballard's
benefit; $30,000 went to help save a real estate venture and the other $56,000 went to pay the Ballards's
family expenses and Ted's attorneys' fees. The evidence shows that on June 2, 1989, Barbara Ballard, at
Ted Ballard's direction, prepared the $85,000 note and deed of trust and that, according to Barbara,
"absolutely it was signed" by Ted. Barbara testified that she and Ted "discussed, on more than one
occasion, that we had prepared the note and deed of trust and Ted had signed it in order to secure [Sam
Berry] and give him priority against our other creditors." Further, Barbara testified that, consistent with her
usual practice, she held the two instruments for Sam Berry, her father. According to Berry, Barbara
Ballard "had always taken care of the paperwork with Ted's instruction, and held the paperwork for me." 
The record also shows that Barbara Ballard last saw the note in the spring of 1992 in the brass box on her
personal desk and that one of her neighbors, Patty Steel, told her that Ted Ballard had bragged of
destroying the original note and deed of trust. (4) Thus, the evidence shows that Berry more than met the
statutory requirements for bringing an action on a lost or destroyed note. 

 Starcrest also contends in its second point of error that the trial court erred in ruling the trust
was liable for the debt of the trustee because there was no evidence of a valid written guaranty and
because, as a matter of law, a trust cannot guarantee the debt of the trustee. A guaranty, however, creates
a secondary obligation under which a guarantor promises to be responsible for the debt of another. 
Tenneco Oil Co. v. Gulsby Eng'g, Inc., 846 S.W.2d 599, 605 (Tex. App.--Houston [14th Dist.] 1993,
writ denied). The guarantor promises to perform an act of the same kind and content as another is
contractually bound to perform in the event that the primary obligor fails to perform. Simmons v.
Compania Financiera Libano, S.A., 830 S.W.2d 789, 792 (Tex. App.--Houston [14th Dist.] 1992, writ
denied). As discussed above, Ted Ballard obligated Starcrest by instructing Barbara Ballard to execute
and then by signing the $85,000 note and deed of trust in his capacity as trustee for Starcrest. See Tex.
Bus. & Com. Code Ann. § 3.402(a) (Tex. UCC) (West Supp. 1996). Thus, Starcrest was the primary
obligor, rather than the guarantor, under the note and deed of trust in question. Accordingly, point of error
two is overruled.

 In its third point of error, Starcrest asserts that the trial court erred in overruling its First
Motion to Strike Counterclaim because Berry failed to timely file his counterclaim. For purposes of this
point of error only, Starcrest concedes the existence of an $85,000 note and deed of trust executed on
June 2, 1989. Starcrest initially filed suit against Berry on May 28, 1993. Berry filed his original answer
on June 18, 1993 and his counterclaim on September 8, 1993. Starcrest asserts that, because the
applicable four-year statute of limitations expired on June 1, 1993, Berry's counterclaim was not timely
filed. Starcrest also argues that, even under the statutory extension found in section 16.069 of the Texas
Civil Practice and Remedies Code (5), Berry's counterclaim was late because it was filed on September 8,
1993, well beyond the July 19, 1993 extension date. 

 On June 2, 1993, the trial court entered an agreed temporary restraining order which
barred Berry from holding a scheduled foreclosure sale of Starcrest's Comal County property. In the
agreed order, both parties stipulated that the statute of limitations was tolled as of May 28, 1993 until
further order of the court. At the temporary injunction hearing on June 14, 1993, the court granted
Starcrest's petition for temporary injunction and set the case for a jury trial to be held on September 27,
1993. The injunction itself made no mention of tolling the limitations period. However, the statement of
facts from the injunction hearing, which was presented to this Court as part of the record, showed that
counsel for Berry specifically asked the trial court whether the limitations period would continue to be tolled
as it was in the temporary restraining order and that the trial court ordered that it would be so tolled.

 Parties may agree to waive the statute of limitations either before or after the expiration of
the prescribed time limit. Duncan v. Lisenby, 912 S.W.2d 857, 858 (Tex. App.--Houston [14th Dist.]
1995, no writ h.); American Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173, 177 (Tex.
App.--Houston [14th Dist.] 1989, no writ). The agreement, however, must be specific and for a pre-determined length of time. Duncan, 912 S.W.2d at 859; American Alloy, 777 S.W.2d at 177. 

 The parties in this case stipulated to the tolling of the limitations period in the agreed
temporary restraining order, which was effective for fourteen days when the hearing on the temporary
injunction took place. Then, in granting Starcrest's petition for temporary injunction, the record shows that
the trial court set a date for trial and further tolled the limitations period. Thus, because the statute of
limitations was tolled, Berry's counterclaim was timely filed and the trial court did not err in overruling
Starcrest's First Motion to Strike Counterclaim. We overrule point of error three. 

 In its fourth and fifth points of error, Starcrest contends that the trial court erred in
engrafting language onto the deed of trust and the release of lien to support its judgment because a court
must strictly interpret contracts and cannot read into a contract that which is not there. "Generally, a deed
of trust is a mortgage with a power to sell on default." Successors to the Interest of Rea-Glass, Inc. v.
Allied Corp., 704 S.W.2d 387, 389 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). "A
mortgage is governed by the same rules of interpretation which apply to contracts." Sonny Arnold, Inc.
v. Sentry Savs. Ass'n, 633 S.W.2d 811, 815 (Tex. 1982). Thus, the same rules of interpretation that
apply to contracts also apply to a deed of trust. Alkas v. United Savs. Ass'n, 672 S.W.2d 852, 858 (Tex.
App.--Corpus Christi 1984, writ ref'd n.r.e.). Further, "[t]he note and deed of trust on . . . property
should be construed together and effectively regarded as one instrument." Chapa v. Herbster, 653
S.W.2d 594, 600 (Tex. App.--Tyler 1983, no writ). Issues of contract interpretation are determinable
as a matter of law. Fisk Elec. Co. v. Constructors & Assocs., 888 S.W.2d 813, 814 (Tex. 1995). 

 In our discussion of point of error two above, we noted that Berry, in meeting the statutory
requirements for bringing an action on a lost note, was able to prove the terms of the lost $85,000 note. 
The first page of the deed of trust, onto which Starcrest alleges the trial court engrafted language, states that
"[t]his conveyance [of Starcrest's Comal County property], however, is made in TRUST to secure payment
of one promissory note of even date herewith in the principal sum of EIGHTY FIVE THOUSAND AND
00/100 Dollars ($85,000) executed by Grantors [Starcrest Trust], payable to the order of Sam C. Berry
. . . ." Construing the lost note and the deed of trust together, it is clear that Ted Ballard, as trustee for
Starcrest, executed the deed of trust in question as security for the lost $85,000 note. 

 Starcrest points to the language on the last page of the deed of trust which states that this
$85,000 deed of trust, made payable to Berry, is given as additional security for the payment of a
$348,000 note dated August 11, 1986. Starcrest argues that Berry, as holder and owner of the $348,000
note, signed a release of lien. According to Starcrest, this release of lien released the $85,000 lien and all
other liens securing the $348,000 indebtedness. We disagree. 

 The release of lien was executed on June 1, 1989. The $85,000 note and deed of trust
were executed on June 2, 1989. The release of lien could not, therefore, have released Starcrest from any
of its obligations under the later-executed note and deed of trust. We note the reference in the $85,000
deed of trust concerning its creation as additional security for the $348,000 indebtedness owed to Berry. 
However, we do not see any conflict between this provision and the remainder of the deed of trust. 
Construing both instruments together, we find Starcrest is obligated to Berry under the lost $85,000 note
and deed of trust. The release of lien does not affect this obligation. Accordingly, we overrule points of
error four and five.

 In its sixth and seventh points of error, Starcrest challenges the legal sufficiency of the
evidence supporting certain of the trial court's findings of fact. Specifically, Starcrest challenges these
findings of fact:



2. Neither Ballard nor the Starcrest Trust has ever made any payments on the $85,000
loan to Berry. No transaction with Lash Publications, Inc. has ever purported to
have any effect on the $85,000 loan. The principal balance outstanding on the loan
is still $85,000.


5. Ballard's execution of the Deed of Trust, pledging Trust property to secure the
$85,000 loan made to him, manifested his intent to revoke the Starcrest Trust. 
Thereafter, the Starcrest Trust continued to be the record owner of the Property
(legal title), but equitable title to the Property reverted back to Ballard.



 A trial court's findings are reviewable for legal and factual sufficiency of the evidence by
the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting
a jury's answer to a jury question. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In
determining a "no evidence" point of error, we must only consider the evidence and inferences that tend to
support the finding and disregard all evidence and inferences to the contrary. Alm v. Aluminum Co. of
Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S.Ct. 135 (1990); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515 (1991). If there is more than a scintilla of
evidence to support the findings, the "no evidence" challenge cannot be sustained. Catalina, 881 S.W.2d
at 297; Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987).

 In its sixth point of error, Starcrest contends that the trial court erred in finding that Ted
Ballard, as trustee, intended to revoke Starcrest Trust because there was no evidence of a written
revocation as statutorily required. Starcrest argues that the $85,000 deed of trust does not express an
intent to revoke Starcrest Trust and, therefore, does not satisfy the requirement of a written revocation as
provided in section 112.051 of the Texas Property Code. 

 Section 112.051 states in pertinent part: 



(a) A settlor may revoke the trust unless it is irrevocable by the express terms of the
instrument creating it or of an instrument modifying it.


 . . .


(c) If the trust was created by a written instrument, a revocation, modification, or
amendment of the trust must be in writing.



Tex. Prop. Code Ann. § 112.051(a), (c) (West 1995).

 In this case, Ted Ballard was the settlor as well as the trustee of Starcrest, a revocable
trust. Ted Ballard, in his capacity as trustee of Starcrest and through his wife, Barbara Ballard, executed
an $85,000 note and deed of trust for the benefit of Sam Berry on June 2, 1989. In this deed of trust, Ted
Ballard conveyed Starcrest's principal asset to secure a loan made by Berry for Ted Ballard's personal
benefit. 

 A trustee may not lend trust funds to himself or to an affiliate. Tex. Prop. Code Ann.
§ 113.052(a)(1) (West 1995). Thus, Ballard's actions must have been taken in his capacity as settlor of
Starcrest. 



Where no procedure for termination is stated in the trust instrument, any reasonable
method may be used.


The instrument claimed to be in exercise of the power of revocation must show an intent
to use the power, although it need not necessarily refer expressly to the power.


Revocation may be held to have occurred by means of a conveyance by the settlor to a
third person that covers the trust property.



George Gleason Bogert, The Law of Trusts and Trustees § 1001 (rev. 2d ed. 1983). Disregarding all
evidence and inferences contrary to the finding of the trial court, we hold that some evidence exists to
support the finding of the trial court. Point of error six is overruled.

 In its seventh point of error, Starcrest asserts that the trial court erred when it failed to rule
that the original obligation that formed the basis of the transaction was novated and discharged because the
certified deed records, testimony and evidence before the court prove, as a matter of law, that novation
occurred.

 Novation must be affirmatively pled. See Tex. R. Civ. P. 94; Forest Lane Porsche Audi
Assocs. v. G & K Servs., Inc., 717 S.W.2d 470, 474 (Tex. App.--San Antonio 1986, no writ). The
burden of proving a novation is on the party asserting it. Villarreal v. Laredo Nat'l Bank, 677 S.W.2d
600, 607 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.). Thus, an appellant attacking the legal
sufficiency of an adverse finding to an issue on which appellant had the burden of proof must demonstrate
on appeal that the evidence conclusively established all vital facts in support of the issue. Harris County
v. Bruyneel, 787 S.W.2d 92, 95 (Tex. App.--Houston [14th Dist.] 1990, no writ). A "matter of law"
point is generally treated as a "no evidence" point. Id. If there is any evidence to support the finding, the
point of error must be overruled. But, if there is no evidence to support the finding, the reviewing court
must then examine the entire record to determine if the contrary proposition is established as a matter of
law. Id. (citing Holley v. Watts, 629 S.W.2d 694, 696-97 (Tex. 1982)).

 In this case, testimony of Berry and Barbara Ballard indicate that the $85,000 note and
deed of trust were executed on June 2, 1989 and represented actual money that Berry had already
advanced or agreed to advance for the benefit of Ted Ballard. Berry testified that he never loaned $30,000
to Country Enterprises and that the purported $348,000 lien representing that loan was bogus. Further,
Berry testified that, because the $348,000 lien was bogus, he signed a release of that lien. This release of
lien executed on June 1, 1989 did not have any effect on the $85,000 note and deed of trust, which were
not executed until June 2, 1989. Berry also testified that Ted Ballard told him that he would attempt to get
some money from Lash Publications, but that this was not in lieu of any existing debts owed by Ballard to
Berry. Because some evidence does exist to support the trial court's finding, we overrule point of error
seven.

 In point of error nine, Starcrest contends that the trial court erred by failing to make
additional findings of fact and conclusions of law because the court's original findings and conclusions were
based on erroneous evidence and incorrect interpretations of law. Additional findings of fact and
conclusions of law are not required to be made by the trial court where, as here, they are directly contrary
to, or inconsistent with, the original findings and conclusions of the trial court. See Strickland v. Coleman,
824 S.W.2d 188, 193 (Tex. App.--Houston [1st Dist.] 1991, no writ); Central Power & Light Co. v.
Bullock, 696 S.W.2d 30, 33 (Tex. App.--Austin 1984, no writ). Further, there is no showing that the
trial court's refusal to make the requested additional findings and conclusions prevented Starcrest from
adequately presenting its case on appeal. See Tamez v. Tamez, 822 S.W.2d 688, 693 (Tex.
App.--Corpus Christi 1991, writ denied); Little v. Linder, 651 S.W.2d 895, 901 (Tex. App.--Tyler
1983, writ ref'd n.r.e.). Point of error nine is overruled.

 In its eighth point of error, Starcrest argues that the trial court erred when it denied
Starcrest's motions and granted Berry's motion for partial summary judgment concerning usury because
the evidence showed that Berry's attempted foreclosure constituted an overcharge in violation of the
applicable statutory authority. 

 The function of a summary judgment is not to deprive a litigant of its right to a full hearing
on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable
defenses. Gulbenkian v. Penn, 252 S.W.2d 929, 931 ( Tex. 1952). A defendant moving for summary
judgment must establish as a matter of law that there is no genuine issue of material fact as to one or more
of the essential elements of the plaintiff's cause of action. Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.,
890 S.W.2d 459, 463 (Tex. App.--Dallas 1994), aff'd, 904 S.W.2d 656 (Tex. 1995); Valles v. Texas
Comm'n on Jail Standards, 845 S.W.2d 284, 286 (Tex. App.--Austin 1992, writ denied). The plaintiff,
as movant in a summary judgment proceeding, has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548 (Tex. 1985); Wilmer, 890 S.W.2d at 463. In deciding whether a disputed material
fact issue exists, we accept as true evidence favorable to the nonmovant. Nixon, 690 S.W.2d at 548-49. 
We indulge in every reasonable inference and resolve any doubts in the nonmovant's favor. Id. at 549.

 The essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute
obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law
for the use of the money by the borrower. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). 

 In this case, Starcrest makes admissions in the summary judgment proof that the $85,000
deed of trust in dispute here was never tendered, that there was never any funding from Berry to Starcrest,
and that there is no $85,000 note that corresponds to the deed of trust. Without admitting to the existence
of a loan from Berry to Starcrest (the first element of usury) or to the existence of Starcrest's obligation to
repay anything to Berry (the second element of usury), Starcrest is hard-pressed to bring a suit for usury
against Berry. Because of these admissions, Starcrest failed to prove all of the elements of usury as a
matter of law, and Berry was easily able to establish that there is no genuine issue of material fact as to one
or more of the essential elements of usury. The trial court acted appropriately in granting defendant's
(Berry's) motion for partial summary judgment and in denying plaintiff's (Starcrest's) motions for partial
summary judgment. Point of error eight is overruled. 

 In its tenth point of error, Starcrest contends that the trial court erred in allowing a party
to take the benefit of a judgment and then argue alternate theories of liability to obtain another judgment
in conflict with the original judgment because of the doctrine of judicial estoppel. 

 A party is judicially estopped in a subsequent proceeding by having alleged or admitted in
pleadings, in a prior proceeding under oath, a position contrary to the assertion sought to be made. Wells
v. Kansas Univ. Endowment Ass'n, 825 S.W.2d 483, 488 (Tex. App.--Houston [1st Dist.] 1992, writ
denied); Estate of Devitt, 758 S.W.2d 601, 603 (Tex. App.--Amarillo 1988, writ denied). "Judicial
estoppel is not established in the absence of any evidence that the averment, on which a claim of estoppel
is based, was made in the course of other judicial proceedings." Wells, 825 S.W.2d at 488; see Estate
of Devitt, 758 S.W.2d at 603.

 In this case, Starcrest mischaracterizes the argument made by Berry in successfully
defending against Starcrest's motion for partial summary judgment. Berry did not argue that Starcrest had
no absolute obligation to repay the $85,000 to Berry. As discussed in point of error eight, Berry merely
pointed out that Starcrest could not prove a usury cause of action as a matter of law while, at the same
time, maintaining a position counter to the necessary elements of that cause of action. Further, the hearing
on Starcrest's motion for partial summary judgment occurred as part of this same judicial proceeding, rather
than as part of some prior proceedings. Because judicial estoppel has not been established in this case,
point of error ten is overruled.

 In point of error eleven, Starcrest contends that the trial court lacked jurisdiction to grant
judgment against Starcrest because the minor beneficiaries were not served, noticed, or afforded ad litem
representation. As a general rule, both the trustee and the beneficiaries should be made parties to suits
involving trust property. Citizens State Bank v. Bowles, 663 S.W.2d 845, 848 (Tex. App.--Houston
[14th Dist.] 1983, writ dism'd). This rule, however, is subject to many exceptions. Id. 

In actions adverse to a trust, if the dispute involves no conflict between the trustee and the
beneficiaries, or between the beneficiaries themselves, a trustee may sue or defend in the
trustee's own name when, either by express grant or necessary implication, that power is
vested in the trustee. In addition, in the absence of a conflict of interest, or of a pleading
that they are inadequately represented, the beneficiaries who did not participate in the trial
are not considered necessary parties to the case.



Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 833 (Tex. App.--Amarillo 1993, no writ).

 In this case, Ted Ballard provided an extremely vigorous defense to Berry's counterclaim
at trial, taking a position throughout that was consistent with that of the beneficiaries. For example, Ballard
attempted to prove, however unsuccessfully, that: (1) no loan was ever made from Starcrest to Berry; (2)
no note ever existed to evidence a loan from Starcrest to Berry; (3) the $85,000 deed of trust was
executed on an interim basis in an attempt to secure Berry between the time he released a $348,000 lien
from Country Enterprises and replaced it with a new $40,000 lien from Lash Publications; and (4) the
$40,000 Lash lien was taken by Berry in place of all earlier liens in his name. Because the interests of the
beneficiaries, Nickolas and Casey Ballard, were not clearly adverse or antagonistic to that of Ted Ballard,
no conflict of interest existed in this case, and the beneficiaries were not necessary parties to the action. 
See Wohler v. La Buena Vida in Western Hills, Inc., 855 S.W.2d 891, 893 (Tex. App.--Fort Worth
1993, no writ) (citing Mason v. Mason, 366 S.W.2d 552, 554 (Tex. 1963)). Further, the record shows
that the beneficiaries did have notice of the suit. In Ted Ballard's testimony, he stated that "they're very
aware of this litigation, they're very dismayed and sad about the litigation, and they have asked me to fight
this as hard as I can to protect their interests, and that's what I have tried to do." Point of error eleven is
overruled. 

 In point of error twelve, Starcrest asserts that the trial court committed plain error in
entering judgment against Starcrest because a trust is not a legal entity and cannot be sued. Starcrest did
not raise this argument at the trial court, and we may not reverse the judgment of the trial court in the
absence of properly assigned error. See Orchid Software, Inc. v. Prentice-Hall, Inc., 804 S.W.2d 208,
211 (Tex. App.--Austin 1991, writ denied). We will liberally construe Starcrest's "plain error" argument
to be an assertion that the trial court committed fundamental error. See Runyan v. Mullins, 864 S.W.2d
785, 788 (Tex. App.--Fort Worth 1993, writ denied). "In order to have fundamental error, the record
must show that the trial court lacked jurisdiction or that the public interest, as declared in the statutes or
Constitution of Texas, is directly and adversely affected." Kirby v. Cruce, 688 S.W.2d 161, 168 (Tex.
App.--Dallas 1985, writ ref'd n.r.e.). 

 In this case, the record does not show fundamental error. On its face, Starcrest's point of
error challenges a trust's capacity to be sued because a trust is not a legal entity. In effect, Starcrest is
really challenging a defect in Berry's pleading of his counterclaim. A court of appeals cannot elevate a
pleading defect to the status of fundamental error. Department of Human Resources v. Wininger, 657
S.W.2d 783, 784 (Tex. 1983). Even assuming Starcrest was complaining of more than a pleading defect,
no fundamental error exists. As discussed above, Ted Ballard revoked Starcrest Trust by pledging the
trust's principal asset in the $85,000 deed of trust. Further, Ballard initially brought suit against Berry, but
did so solely in the name of Starcrest Trust. Thus, in his counterclaim, Berry only named Starcrest. Berry's
pleadings sufficiently gave fair and adequate notice of his counterclaim to Ted Ballard despite any alleged
variance between his pleadings and the proof at trial, and Ballard actively participated in all aspects of the
proceedings below. Accordingly, point of error twelve is overruled.



RULE 84 SANCTIONS


 After careful deliberation, we consider and award sanctions against appellant by our own
motion. See Tex. R. App. P. 84. We find this appeal was taken for delay and without sufficient cause. 
Appellant's brief was at best confusing and at worst misleading and served no more than to cloud the
straightforward issues of this case. Although we cannot say all of the discrepancies between the record
and appellant's brief were purposeful, they exceeded acceptable bounds and showed an absence of good
faith on appellant's part.

 Further, this case went to mediation and settled while it was pending on appeal but before
submission. Appellant, however, refused to comply with the terms of the mediated settlement to which he
agreed for reasons that were unconvincing if not unbelievable.

 It is with reluctance and caution that we exercise our discretion to award sanctions in this
case. See Casteel-Diebolt v. Diebolt, 912 S.W.2d 302, 306 (Tex. App.--Houston [14th Dist.] 1995,
no writ h.). The purpose of Rule 84 is to shift part of an appellee's expense and burden in defending a
frivolous appeal to the appellant. Roever v. Roever, 824 S.W.2d 674, 677 (Tex. App.--Dallas 1992,
no writ); Naydan v. Naydan, 800 S.W.2d 637, 644 (Tex. App.--Dallas 1990, no writ). "This Court
strongly believes that meritless litigation constitutes an unnecessary burden on both the parties and the
courts." Dolenz v. American Gen. Fire & Casualty Co., 798 S.W.2d 862, 865 (Tex. App.--Dallas
1990, writ denied). Accordingly under Rule 84, we assess damages against Starcrest and in favor of Berry
in the amount of $10,000, which is less than ten percent of the trial court's monetary judgment against
Starcrest. 



CONCLUSION


 Because we have overruled Starcrest's twelve points of error, we affirm the judgment of
the trial court.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and Kidd


Affirmed


Filed: June 26, 1996


Publish

1.   Starcrest does not appeal from the summary judgment below which discharged Thomas
J. Smith and Smith, Barshop, Stoffer & Millsap, Inc.
2.   It should be noted that the encumbered property referred to here by Ted Ballard is not
the same encumbered property described by the $85,000 deed of trust and referred to by
Berry in his version.
3.   The UCC defines "person" to include an individual or an organization. Tex. Bus. &
Com. Code Ann. § 1.201(30) (West 1994). "Organization" is defined to include trusts. Id.
§ 1.201(28).
4.   Although Starcrest complains that the testimony concerning Ted Ballard's destruction of
the note was hearsay, Starcrest did not object to its admission at trial. Assuming without
deciding that the testimony was not an admission by a party-opponent or hearsay subject to
one of the many exceptions, we note that even "[i]nadmissible hearsay admitted without
objection shall not be denied probative value merely because it is hearsay." Tex. R. Civ.
Evid. 802.
5.   The extension found in section 16.069 provides that a counterclaim arising out of the
same transaction or occurrence that is the basis of an action may be filed up to thirty days
after the date on which the party's answer is due even though as a separate action the
counterclaim would otherwise be barred by limitation on the date the party's answer is
required. See Tex. Civ. Prac. & Rem. Code Ann. § 16.069 (West 1986).


spects of the
proceedings below. Accordingly, point of error twelve is overruled.



RULE 84 SANCTIONS


 After careful deliberation, we consider and award sanctions against appellant by our own
motion. See Tex. R. App. P. 84. We find this appeal was taken for delay and without sufficient cause. 
Appellant's brief was at best confusing and at worst misleading and served no more than to cloud the
straightforward issues of this case. Although we cannot say all of the discrepancies between the record
and appellant's brief were purposeful, they exceeded acceptable bounds and showed an absence of good
faith on appellant's part.

 Further, this case went to mediation and settled while it was pending on appeal but before
submission. Appellant, however, refused to comply with the terms of the mediated settlement to which he
agreed for reasons that were unconvincing if not unbelievable.

 It is with reluctance and caution that we exercise our discretion to award sanctions in this
case. See Casteel-Diebolt v. Diebolt, 912 S.W.2d 302, 306 (Tex. App.--Houston [14th Dist.] 1995,
no writ h.). The purpose of Rule 84 is to shift part of an appellee's expense and burden in defending a
frivolous appeal to the appellant. Roever v. Roever, 824 S.W.2d 674, 677 (Tex. App.--Dallas 1992,
no writ); Naydan v. Naydan, 800 S.W.2d 637, 644 (Tex. App.--Dallas 1990, no writ). "This Court
strongly believes that meritless litigation constitutes an unnecessary burden on both the parties and the
courts." Dolenz v. American Gen. Fire & Casualty Co., 798 S.W.2d 862, 865 (Tex. App.--Dallas
1990, writ denied). Accordingly under Rule 84, we assess damages against Starcrest and in favor of Berry
in the amount of $10,000, which is less than ten percent of the trial court's monetary judgment against
Starcrest. 



CONCLUSION


 Becaus